RAÚL R. LABRADOR
ATTORNEY GENERAL

MICHAEL J. KANE
SPECIAL DEPUTY ATTORNEY GENERAL
MICHAEL KANE & ASSOCIATES, PLLC
4355 West Emerald Street, Suite 190
Post Office Box 2865
Boise, Idaho 83701-2865
Telephone:  (208) 342-4545
Facsimile:  (208) 342-2323
Email:  mkane@ktlaw.net
Idaho State Bar No. 2652

ATTORNEYS FOR IDAHO STATE DEFENDANTS


IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ESTATE OF ROBERT THOMAS SEQUINTS, by and through its personal representative, XAVIER T. SEQUINTS; S.S., D.S., and J.S., minor children, by and through their guardian BRENT SEQUINTS, SR.; and BRENT SEQUINTS, SR., | ) ) ) ) ) ) ) | Case No. 1:24-cv-00271-DKG |
| Plaintiffs, | ) ) | |
| vs. | ) ) | AFFIDAVIT OF R. SCOT HAUG IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| MIGUEL RIVERA, JR., in his individual capacity; IDAHO STATE POLICE, an Administrative Agency of the State of Idaho; STEVEN DAVIS and MATT SMITH, in their individual capacities; and JOHN/JANE DOES 1-10, other law enforcement officers whose true names are unknown, in their individual capacities, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

STATE OF IDAHO            )
                          ) ss:
County of KOOTENAI )

I, R. SCOT HAUG, being first duly sworn on oath, state that:

1.      I am a Police Practices Consultant with Public Safety Insight, LLC, a Police

Practices Consulting Firm.

2.      Attached hereto as Exhibit A is a true and correct copy of my Expert Witness Report

disclosed in the above-captioned matter on July 1, 2025, on behalf of Defendant in the above-

referenced matter.   Said report includes my analysis, findings and opinions, along with my

qualifications, etc. (including my Curriculum Vitae), fee schedule and prior testimony.

3.      This affidavit and attached report are being filed in reply to the Declaration of

Victor McCraw, filed on February 6, 2026 (Dkt. 35-2), on behalf of Plaintiffs in opposition to

Defendant Miguel Rivera, Jr.'s, Motion for Summary Judgment.

DATED this 19 day of February, 2026.


_____
R. SCOT HAUG


SUBSCRIBED AND SWORN before me this ___ day of February, 2026.


_____
Notary Public for State of ~~Idaho~~ New York
Residing at: Kings County
My Commission Expires: 9/5/2028


MARTIN GONZALEZ
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GO0028580
Qualified in Kings County
My Commission Expires 09-05-2028


AFFIDAVIT OF R. SCOT HAUG IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – P. 2

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of February, 2026, I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court's CM/ECF System for this action:

- **Richard A. Eppink, David DeRoin, Megan Harrigfeld**
  ritchie@wrest.coop, david@wrest.coop, megan@wrest.coop

- **Richard A. Hearn**
  hearn@hearnlawyers.com

- **Michael J. Kane**
  mkane@ktlaw.net, kdelisio@ktlaw.net

                                    /s/ *Michael J. Kane*
                                    MICHAEL J. KANE

# DEFENDANT'S EXPERT WITNESS REPORT
## R. Scot Haug - June 26, 2025

## Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.
## United States District Court, For the District of Idaho
## Case No. 4:24-cv-271



Public Safety Insight, LLC
**R. Scot Haug, Police Practices Consultant**
Post Office Box 1011 | Post Falls | Idaho | 83877
(208) 661-1235
scot@publicsafetyinsight.com

**HAUG AFFIDAVIT--EXHIBIT A- P. 1**

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A  (Haug) - P. 1

# Table of Contents

**Introduction** ........................................................................................................................... 3

**Factual Background** ................................................................................................................ 4

**Documents and Information Reviewed** .............................................................................. 11

**Summary of Expert Qualifications** ..................................................................................... 14

**Opinions** ............................................................................................................................... 20

    Authority and Training Principals ..................................................................................... 20

    Response to the Call .......................................................................................................... 25

    Use of Force ....................................................................................................................... 31

    Use of the TASER .............................................................................................................. 40

    De-Escalation .................................................................................................................... 47

    Policy and Procedure ........................................................................................................ 49

    Investigation ...................................................................................................................... 50

**Conclusion** ............................................................................................................................ 51

**Summary of Expert Findings** .............................................................................................. 58

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **2** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 2**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 2

## Introduction

Michael Kane & Associates, based in Boise, Idaho, has retained Public Safety Insight LLC, where I serve as a principal, to conduct an expert analysis in connection with this case. Specifically, I have been asked to provide my professional opinion regarding the actions of Idaho State Police Trooper Rivera in the incident involving the death of Robert T. Sequints on June 23, 2022, in Pocatello, Idaho[1].

On Friday, May 30, 2025, I received the materials pertaining to this case. Since that time, I have reviewed the evidence provided.

As part of my review, I obtained the statements of Trooper Rivera[2] and audio/video recordings of the in-car mounted video recorder. I have also reviewed Trooper Rivera's statements made to investigators, as well as numerous pieces of evidence detectives provided during their investigation. In my review, I used video slowdown software to analyze the relevant in-car camera footage to assess the moments leading up to and following the incident. Although the placement of the patrol vehicle caused the camera to point away from the location of the physical altercation, the video does provide some contextual clarity; however, it does not capture all the events leading up to the death of Mr. Sequints. Despite this, both the visual and audio

---

[1] This report will serve to comply with Federal Rules of Civil Procedure Rule 26(a)(2).

[2] Throughout this report, I will use various terms to describe a law enforcement officer. Terms such as Police Officer, Officer, Trooper, or rank-specific titles all refer to a law enforcement officer.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **3** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 3**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 3

components of the recording remain valuable sources of information and were carefully reviewed, in conjunction with the supporting documents, to help evaluate the facts and circumstances surrounding this rapidly evolving incident.

To assist in my review, I have relied on the information provided to me, including, but not limited to, interviews, reports, audio and video evidence, photographs, transcripts, 911 calls, radio transmissions, written documents, depositions, and witness statements that help corroborate the facts in this matter. The opinions that follow are made with a reasonable degree of certainty within the field of police practices.

## Factual Background

A concise statement of material facts was included in the investigation conducted following the death of Robert Sequints. The Pocatello Police Department served as the lead investigative agency, with support from the Bannock County Sheriff's Office and the Chubbuck Police Department. I have relied on and incorporated those facts, along with the other documents and evidence reviewed in forming my opinion on this matter.

It is undisputed that during the evening of June 23, 2022, the Pocatello Police Department dispatch center received multiple 911 calls reporting a pedestrian attempting to walk in front of vehicles on Interstate 15 near Milepost 71 in Pocatello, Idaho. Interstate 15 is a major, heavily traveled corridor where traffic frequently moves at high speeds, often exceeding the posted limit.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **4** of **59**

HAUG AFFIDAVIT--EXHIBIT A, P. 4
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 4

The volume and pace of traffic presents significant safety risks, particularly for pedestrians on or near the roadway. Several callers reported that the individual was stepping into traffic and appeared to be in danger, posing a serious risk to himself and motorists.

Callers reported that they nearly struck the male as he walked into traffic, with one caller specifically stating that the individual was "trying to jump right in front of me," indicating the pedestrian's actions were intentional rather than accidental[3]. The subject was described as a male wearing a red shirt and khaki pants.



*Figure 1: This is an overview image of the scene and is intended for general reference; it may not reflect exact positions or scale.*

---

[3] DEFS 000185-000397 Spillman Files\DEFS 000185 06-23-22 11.18.46PM Emergency (911-7) - 3.wav

---

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **5** of **59**
HAUG AFFIDAVIT--EXHIBIT A, P. 5
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 5

It is standard practice for the Idaho State Police to be notified and to respond to emergency incidents that occur along Idaho interstates. Accordingly, the Pocatello Dispatch Center notified the Idaho State Police about the incoming calls. However, at the time of the 911 calls, the Idaho State Police resources were limited due to their response to a separate, unrelated triple-fatal traffic collision that had taken place earlier near the city of Blackfoot[4]. Trooper Rivera, who was at the district office completing paperwork, was the only trooper available and responded when the 911 call was dispatched.

Trooper Rivera responded to the call and, while en route, was advised that the pedestrian had entered the northbound lanes of Interstate 15. Earlier calls had reported the subject was in the southbound lanes. Recognizing the danger posed by someone attempting to jump into traffic, he turned on his emergency lights as he left the district office, which is located approximately four miles from the scene[5].

Given the dark conditions near Milepost 69, Trooper Rivera used both his emergency lights and spotlight to aid visibility and warn approaching drivers. He then began driving in the center of both northbound lanes to slow approaching vehicles. Visibility was limited because of the darkness; however, weather conditions were clear, and traffic was minimal. Trooper Rivera caught sight of a red shirt lying alongside the roadway as he neared the northbound crossover at

---

[4] To provide context, Blackfoot, Idaho, is approximately 25 miles north of Pocatello.

[5] DEFS 000419 OPS 2022-005 IV Trooper Miguel Rivera.MP3

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **6** of **59**

HAUG AFFIDAVIT--EXHIBIT A, P. 6
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 6

Milepost 71. He then pulled into the median between the north and southbound lanes and used the crossover[6] to investigate.

As Trooper Rivera stepped out of his patrol vehicle to investigate the red shirt, a rustle in the tall grass caught his attention and seconds later, he spotted a shirtless man, later identified as Mr. Sequints[7]. Mr. Sequints immediately stood up, took a fighting stance, balled his fists, and stated, "Come on." Given the nature of the call and Mr. Sequints' threatening behavior, Trooper Rivera was concerned for his safety.

The initial encounter unfolded very quickly. Mr. Sequints was approximately 8 to 12 feet away from Trooper Rivera and displayed several indicators of potential violence, including reaching behind his back, balling his fists, and assuming a fighting stance—all which police officers recognize as danger cues. Taking this into consideration, Trooper Rivera drew his firearm and gave several loud verbal commands for the male to show his hands.[8] Mr. Sequints then turned suddenly and ran directly into the northbound lanes of traffic. As he was running into traffic, Trooper Rivera observed Mr. Sequints' waistband area and saw no visible weapons, so Trooper Rivera holstered his firearm and transitioned to his TASER.

---

[6] A crossover is a designated area between the northbound and southbound lanes of a divided highway that allows authorized vehicles to transition between directions.

[7] It is unknown whether Trooper Rivera ever formally identified the male as Robert Thomas Sequints. While his name is used throughout this report for clarity and consistency, there is no indication that Trooper Rivera knew the male's identity during the initial encounter. Identification was made later by other responding officers.

[8] DEFS 000419 OPS 2022-005 IV Trooper Miguel Rivera.MP3

Despite repeated commands from Trooper Rivera to stop, Mr. Sequints ran onto the interstate, behaving in an erratic manner. He continued briefly onto the roadway, then abruptly turned and began advancing toward Trooper Rivera in a fighting stance.

With traffic speeding by and safety a pressing concern, Trooper Rivera continued to give repeated verbal commands, all which Mr. Sequints ignored. Recognizing the risk of engaging hands-on near active, high-speed traffic, Trooper Rivera deployed his TASER in an attempt to detain Mr. Sequints and minimize the risk of being hit by a passing vehicle. After being struck by the TASER,[9] Mr. Sequints fell onto the left shoulder of the interstate[10].

Mr. Sequints got up immediately after the five-second TASER cycle ended[11] and again **ran**[12] directly into traffic[13]. Trooper Rivera observed vehicles approaching in the right lane and used his flashlight in strobe mode[14] to alert and slow traffic while screaming at Mr. Sequints to get up and

---

[9] Deposition of Trooper Miguel Rivera, JR - Page 119, line 11-13 and Page 108, line 14-24.

[10] Deposition of Trooper Miguel Rivera, JR – Page 107, line 15-25.

[11] A standard TASER cycle lasts five seconds and is intended to cause neuromuscular incapacitation (NMI), though the level of incapacitation can vary depending on probe placement and other factors, typically during the cycle, the individual is unable to move or resist. Once the TASER cycle ends, the electrical current stops and the individual typically regains full control of their body immediately.

[12] The distinction that Mr. Sequints ran, not merely walked or rolled, into the travel lane is significant. Allegations suggest that he was incapacitated following the TASER deployment; however, evidence shows that after the five-second TASER cycle ended, Mr. Sequints regained full mobility, got up under his own power, and ran into the active traffic lane.

[13] Deposition of Trooper Miguel Rivera, JR – Page 112, line 6-23.

[14] Strobe mode on a flashlight is a high-intensity, rapid-flashing light setting designed to draw immediate attention. Unlike a steady beam, the flashing effect is much more noticeable—especially in low-light or nighttime conditions—making it effective for signaling urgency or warning of danger.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 8 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 8**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 8

out of the path of oncoming traffic. Mr. Sequints was verbally responsive during this time, demonstrated by his statement about being shot. After running into the traffic lanes, Mr. Sequints laid down in the roadway and continued to ignore Trooper Rivera's commands/pleas to move.

During this time, a vehicle had passed within three feet of Trooper Rivera and was just inches from striking Mr. Sequints, who was lying face down in the roadway. Mr. Sequints briefly lifted himself onto his elbows, looked back at an oncoming vehicle, and then laid back down.

Despite Trooper Rivera's continued commands[15] and efforts to warn approaching drivers, a vehicle traveling at high speed struck and killed Mr. Sequints. Less than two minutes passed from the time Trooper Rivera exited his patrol vehicle to the time Mr. Sequints was struck and killed.

The white vehicle that struck and killed Mr. Sequints fled the scene and has never been identified.

The Pocatello Police Department conducted a comprehensive investigation following the incident with assistance from the Bannock County Sheriff's Office. The investigation included evidence collected from the scene, interviews with Trooper Rivera and witnesses, and the

---

[15] Describing Trooper Rivera's efforts merely as "commands" or "pleas" fails to capture the true nature of his actions in those critical moments. The audio recording reflects a profound sense of urgency -Trooper Rivera is heard yelling, pleading, and ultimately screaming as he desperately tries to get Mr. Sequints out of the roadway. These were not routine commands; they were emotionally charged attempts by an officer who clearly recognized the life-threatening danger unfolding before him and was doing everything in his power to prevent a tragedy.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 9 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 9**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 9

involvement of an accident reconstructionist. The incident is thoroughly documented in multiple reports detailing the sequence of events, the use of force, and the circumstances leading to Mr. Sequints' death.

On June 9, 2024, a civil lawsuit was filed in connection with the incident involving Mr. Sequints. The complaint asserts the following claims:

    a. Excessive Force – Alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983, brought against all individual defendants.

    b. Wrongful Death: Negligent Supervision and Training – Brought under Idaho state statutory and common law against the Idaho State Police.

To form my opinions, I thoroughly reviewed a wide range of materials, including the following documents and evidence.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 10 of 59
HAUG AFFIDAVIT--EXHIBIT A, P. 10
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 10

## Documents and Information Reviewed

My opinions in this report are based upon my review of the following materials[16] as well as my education and experience in law enforcement (outlined in this report and in the attached CV):

1. Report of Bryan Chiles, AXON

2. Complaint

3. Idaho State Defendants' Answer to Plaintiffs' Complaint

4. Memorandum Decision and Order

5. Plaintiffs Expert Disclosure

6. Defendants' Initial Disclosures

7. Plaintiffs' Initial Disclosures

8. Rivera Audio Transcript – Notes

9. Dr. Jorgensen Case Log

10. Dr. Jorgensen CV

11. Dr. Jorgensen References

12. Dr. Jorgensen Report

13. McCraw Case Log

14. McCraw CV 2025

15. McCraw Report 2025

16. McCraw Scenario Slide

17. Plaintiffs' First Supplemental Responses to Defendants' First Set of Discovery.

---

[16] I have received several gigabytes of documents and have made every effort to recall and list all the materials I've been given. While I reference documents by title in this report, it should be noted that some contain additional relevant information beyond what is specifically cited or summarized here.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **11** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 11**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 11

18. Plaintiffs' Responses to Defendants' First Set of Discovery, with Attachments.

19. Autopsy Photos

20. Photos of Suspect Vehicle

21. Pocatello Police Department Detailed Incident Report 22-P12255, Including Attachments.

22. Idaho State Police Dispatch Audio Files.

23. Pocatello Police Dispatch Audio Files

24. Scene pictures

25. Law Enforcement Radio Traffic Audio Files, Various

26. Idaho State Police Certification Statement

27. Audio file of Interview of Trooper Rivera, Conducted by Victoria Gooch

28. Administrative Investigation Warning

29. Use of Force Review Memorandum, Stephen Herzog, Bannock County Prosecutor.

30. Detailed CAD History for Police Event #E22025236

31. Handwritten Notes from Miguel Rivera

32. Trooper Rivera POST Training Record

33. Trooper Rivera's Written Statement

34. Idaho State Police, Administrative Leave without Pay Memorandum

35. Idaho State Police Prosecutor Notification Final

36. Idaho State Police Prosecutor Update

37. Idaho State Police Initial Letter to Trooper Rivera

38. Idaho State Police Administrative Report – 2022-005

39. Various Idaho State Police Emails

40. Graham ICV P22000508

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **12** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 12**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 12

41. Dietrich ICV P22000508

42. Winans ICV P22000508

43. Idaho State Police Interoffice Memo – OPS 2022-05

44. Idaho State Police Interoffice Memo – Second Level Review OPS 2022-005

45. Idaho State Police Property Transfer Form

46. Bannock County Coroner's Office, Case Report 220624-162

47. Deposition of Bren Sequints, Sr. – With Exhibits 4-8

48. Deposition of Xavier Sequints – With Exhibits 1-3

49. Deposition of Lt. Colonel Fritz Zweigart – With Exhibits

50. Deposition of Detective Victoria Gooch

51. Deposition of Chief Roger Schei

52. Pocatello Police Department, Supplemental for Incident – 22-P12255

53. Eastern Idaho Critical Incident Protocol Document

54. Traffic Enforcement Team MOU

55. CIT Training Outline

56. Deposition of Detective Tracy Marshall, With Exhibits 1-7

57. Deposition of Trooper Miguel Rivera, Including Exhibits 8-20

58. Idaho Post Training Material – Basic Mental Illness Awareness

59. Idaho Post Training Material – Development Disabilities

60. Idaho Post Training Material – Effective Communications

61. Idaho Post Training Material – Patrol Procedures

62. Idaho Post Training Material – Responding to Calls for Service

63. Idaho Post Training Material – TIM Training

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **13** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 13**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 13

64. Federal Highway Administration. (2013). National Traffic Incident Management Responder Training Program.

65. Axon, TASER X2 User Course

66. Graham v. Connor, 490 U.S. 386 (1989)

67. IACP Law Enforcement Policy Center

My conclusions are based on the comprehensive review of these materials, supported by my extensive experience and qualifications in law enforcement, as outlined below.

## Summary of Expert Qualifications

I have nearly 32 years of combined law enforcement experience, including extensive service as a nationally recognized law enforcement trainer. Over the course of my career, I spent more than 20 years in supervisory roles including field training officer, sergeant, administrative sergeant, lieutenant, and captain. Most recently I served as the Chief of Police for the Post Falls (Idaho) Police Department, retiring from that position in March 2018. I held the Chief of Police position for approximately nine years. In this role, I was responsible for the overall operation and oversight of approximately 100 employees and volunteers within the Department. My duties included directing all activities of the police department, developing and implementing departmental policies and procedures, and managing all personnel matters, including hiring, promotions, and, when necessary, employee terminations. I was also responsible for strategic planning to ensure the effective deployment of resources and for coordinating departmental efforts with other local agencies. I worked to ensure that all services provided were of the highest

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **14** of **59**
**HAUG AFFIDAVIT--EXHIBIT A, P. 14**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 14

quality. Additionally, I was accountable for achieving both departmental and citywide goals and objectives within established policy frameworks. I worked closely with department personnel to ensure that our policing mission was carried out with professionalism and effectiveness.

I am a founding member, core trainer, and national speaker for Below 100[17], a nationally recognized officer safety initiative focused on reducing line-of-duty deaths to fewer than 100 per year. Below 100 addresses preventable causes of officer fatalities through practical, mindset-driven training based on key safety tenets. In this role, I have spoken to thousands of officers nationwide, helping agencies foster a culture of safety, accountability, and sound decision-making to better protect those who serve.

I was an Idaho Peace Officer Standards and Training instructor since 1992 and served as the primary Arrest Techniques and Handcuffing Instructor at North Idaho College[18] for nearly 10 years. I was also the primary Arrest Techniques and Handcuffing Instructor for the North Idaho Reserve Academy. As a former SWAT Commander, I have completed both the basic SWAT and team commander training from the National Tactical Officer Association[19]. I have consulted on use of force matters and have lectured to thousands of law enforcement officers and executives nationwide on officer safety and agency risk reduction. I have taught officer safety topics to new

---

[17] Below 100 is an award winning, national officer safety program funded in part by NHTSA, focused on reducing preventable line-of-duty deaths and injuries.

[18] Located in Coeur d' Alene, Idaho

[19] https://www.ntoa.org/

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 15 of 59
**HAUG AFFIDAVIT--EXHIBIT A, P. 15**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 15

recruits at the North Idaho Basic Patrol Academy and am currently certified by the Force Science Institute[20] to analyze use of force incidents.

Over the past 28 years, I have received extensive training in Use of Force, Spontaneous Knife Defense, Defensive Tactics and Arrest Techniques, which include the use of handcuffs and the associated techniques used by officers to apply them. I have taught hundreds of law enforcement officers the proper techniques to safely and legally place an arrestee into custody.

I was a TASER certified instructor for nearly 10 years, where I was involved in the research, purchase and implementation of the TASER program for our department. I provided dozens of TASER classes to law enforcement officers. I have attended TASER classes at TASER International in Scottsdale, Arizona and was a certified TASER Armorer which certified me to complete repairs on the TASER device. I have carried the TASER during the normal course of my employment as a police officer, during training I have used the TASER and understand the effects of the tool. I have also had the TASER deployed on me on several occasions during training situations.

As a committee member for the Idaho Peace Officers Standards and Training, I participated in the standardization and development of the Idaho Arrest Techniques and Handcuffing Curriculum for the State of Idaho. I was one of 12 law enforcement employees who participated from across the state. The Arrest Techniques manual we developed has been used to train police

---

[20] https://www.forcescience.com/

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 16 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 16**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 16

officers across the state and much of this information is still in use today by the Idaho Peace Officer Standards and Training.

I was selected to serve as a representative of the Statewide Lexipol Model Policy Board where I assisted Idaho Counties Risk Management Pool and Lexipol in developing a statewide model policy for Idaho. Lexipol is a benchmark within the law enforcement community, used by hundreds of law enforcement agencies, and is Commission on Accreditation of Law Enforcement Agencies (CALEA) compliant.

I have written several magazine articles on law enforcement related matters and have presented at several major conferences across the country on a variety of law enforcement related topics, including the Computer World Magazine Conference, the International Chiefs of Police Association Conference and the FBI National Academy Associates National Conference. In addition, I have presented at numerous regional conferences, including National Technical Investigators Association, Association of Idaho Cities Annual Conference, Idaho Chiefs of Police Association, American Association of Motor Vehicle Administrators, Idaho Association of Paralegals and the Law Enforcement Video Association. I have also provided virtual training nationally on several occasions.

I am a graduate of the Idaho Peace Officers Standards and Training Academy and hold the Basic, Intermediate, Advanced, Management and Instructors certificates. Additionally, I am a graduate

of the FBI National Academy located in Quantico, Virginia and an active member of the International Association of Chiefs of Police and International Law Enforcement Educators and Trainers Association.

I have been an active member of the Idaho Chiefs of Police Association for over 15 years and served as the President of the Association. I served as the Chairman for the North Idaho College Law Enforcement Program Advisory Committee where I provided insight and consulting to the North Idaho College Law Enforcement Program related to training new police officers. As part of my responsibilities on this Committee, I assisted with forming the North Idaho Basic Patrol Academy, which is currently operating.

In 2015, I was appointed by Governor Otter to the Idaho Peace Officer Standards and Training Commission as a Commissioner.

In addition to my work on use of force matters, I actively consult on the use of technology in law enforcement, including body worn and in-car camera technology. I have worked on numerous law enforcement related technology projects, from the design, implementation and actual physical installation of these technologies. I have served as a past member of the Department of Justice, National Institute of Justice Technical Working Group as a technical expert providing consulting and research on several national law enforcement related technology projects. I served on the International Association Chiefs of Police (IACP) License Plate Recognition (LPR)

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **18** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 18**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 18

subcommittee as one of several members developing LPR standards for the Department of Justice. I also worked with the IACP to develop their model policy on the use of LPR; this model policy is used across the Country as a guideline in the use of LPR.  As part of the IACP technical working group, I have also consulted with the IACP on interview room camera technology and provided instruction to attendees of the IACP conference in Chicago, IL.  I have provided consulting to law enforcement agencies across the country on technology related projects and have been interviewed by news organizations and law enforcement magazines, including The Atlantic, Law Officer Magazine, Law and Order Magazine and Calibre Press, on police technology.

I have served as a technology consultant to companies such as Lockheed Martin, Booz Allen Hamilton, the National Institute of Justice and the International Association Chiefs of Police.

I have been responsible for implementing many technology programs including both in-car and body worn video programs. These technology projects have been featured in Law Officer Magazine, Computer World magazine, CEO magazine, and the Harvard University Government Innovators Network.

Additional information on my background and experience is provided in the attached CV, which I have incorporated into this report.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **19** of **59**

HAUG AFFIDAVIT--EXHIBIT A, P. 19

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 19

# Opinions

My opinions are based on reviewing the information provided to me, as well as my extensive and ongoing training and 32 years of experience in law enforcement, over 25 years of which has involved research, development and training in law enforcement technology, officer safety, police use of force and techniques used to lawfully place individuals under arrest. I reserve the right to change my opinion if additional information or documents are provided or whether it is determined that information upon which I have relied on to form my opinion is found to be inaccurate or was misrepresented. My opinions and use of certain terms merely reflect my training and experience in applying reasonable standards of care and generally accepted best practices as to the conduct of police officers, and do not presume or imply a statement of any legal opinion.

In forming my professional opinion to determine the reasonableness of the involved trooper's actions, I have considered the following specific items of information in context with relevant items, documents and information which were previously listed as having been provided and reviewed. Where appropriate, I have indicated whether the actions of the involved trooper were in keeping with commonly accepted, proper police tactics.

## ___Authority and Training Principals___

    a.   The Idaho State Police possess clear statutory authority under Idaho Code to respond to calls for service on any interstate within Idaho. Given the 911 calls received on June

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 20 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 20**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 20

23, 2022, regarding Mr. Sequints creating hazardous conditions on Interstate 15, an Idaho State Police response to investigate was both authorized and expected. This authority derives from multiple statutory provisions that establish both the duties and jurisdictional scope of Idaho State Police officers[21].

b. In many cases, officers[22] find themselves in rapidly evolving situations where they must make critical, life-altering decisions with little time to develop a detailed plan of action. To assist officers in preparing to properly deal with these rapidly evolving situations, officers go through extensive law enforcement training, providing them with tools and tactics that may help them deal with the rapidly unfolding and sometimes unpredictable situations.

All Idaho State Police troopers are required to attend and successfully complete a basic police academy overseen by the Idaho State Police. Trooper Rivera fulfilled this requirement, graduating from the accredited Idaho State Police training academy. Trooper Rivera also graduated from the Idaho State University Law Enforcement Academy, further demonstrating his formal training and preparation for law enforcement duties.[23] During his training, he received instruction relevant to this

---

[21] Idaho Code §67-2901 establishes the Idaho State Police and defines its powers and duties, including the authority to patrol and enforce laws.

[22] [1] Throughout this report, the term "officer" is used broadly to encompass all sworn law enforcement personnel, including but not limited to police officers, sheriff's deputies, state troopers, and other peace officers as defined under Idaho Code § 19-5101(d).

[23] Idaho POST Academy Employee Profile – Trooper Rivera

incident, on a wide range of topics, including Traffic Control, Use of Force, TASER Certification, Firearms, Subject Control, Patrol Techniques, Stops and Approaches, Mental health crises, including instruction on behavioral indicators, communication strategies, de-escalation techniques, call response, scene protection, and appropriate referral or intervention options. Trooper Rivera's education, training, and experience support practices designed to promote safer outcomes for both individuals in crisis and responding officers.

Following the academy, Trooper Rivera participated in a rigorous Field Training Officer program designed to prepare new troopers for solo duty by the end of their training cycle. The Field Training Officer program[24] covers all essential aspects of law enforcement, reinforcing the subjects and practical skills that officers studied and practiced during their time at the academy. The training cycle includes intensive on-the-job training and daily performance evaluations, conducted by field training officers. Troopers must meet specific performance standards in these areas before being certified for solo patrol duty.

In addition to his initial academy training, Trooper Rivera holds both a bachelor's and an associate degree and has completed hundreds of hours of advanced law

---

[24] The Field Training Officer program allows newly sworn officers (often called "trainees" or "probationary officers") to apply what they learned in the academy in real-world situations under the supervision of an experienced officer, the Field Training Officer.

**HAUG AFFIDAVIT--EXHIBIT A, P. 22**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 22

enforcement training. He also worked for two other law enforcement agencies as a police officer with over 12 years of professional experience, Trooper Rivera is a well-trained and seasoned police officer who meets all the State requirements.

c.  Through training and appropriately developed agency policy, troopers are instructed as to the reasonable and lawful steps to deal with different types of behavior and steps to reduce the risk of injury or death to themselves and others. This comprehensive education and experience[25] described above are designed to equip them with the necessary training, tools and techniques to appropriately manage a wide range of incidents, including the use of a TASER and other use of force options.

d.  Law enforcement training is based on maintaining peace, facilitating safety, and restoring order. No matter the circumstances, these are always the desired outcomes. Because law enforcement crises are so complex, all law enforcement training is founded upon general principles and systematic practices aimed at reducing or eliminating variables that occur during crises and maintaining public safety.

e.  When securing a scene, police officers are trained to allocate risk according to those with most control over their fate. This principle is commonly known as priorities of life

---

[25] Trooper Rivera had completed over 600 hours of law enforcement training. He was currently a certified Idaho Peace Officer Standards and Training (POST) instructor and holds both Basic and Intermediate Police Officer certifications through the Idaho POST Academy.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **23** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 23**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 23

or safety priorities[26]. Officers are trained to make decisions based on the following priorities in respective order of importance: 1) the safety of innocent/uninvolved citizens, 2) the safety of responding officers, and 3) safety of the offender/source of the conflict. This model allocates risk according to those with most control over their circumstances, "utilizing objective criteria based on an individual's current or likely risk of suffering serious bodily injury or death and their direct ability to remove themselves from that danger. Those exposed to the greatest potential of injury with the least ability to escape the situation are placed at the top of the priorities. On the other end of the continuum is the suspect, who has little threat of injury and absolute control over the situation [through his/her ability to surrender and/or cease the dangerous behavior][27]."

f.  Based on my review of Trooper Rivera's training, education and experience he was well equipped to handle this situation.

g.  It is evident that Trooper Rivera was easily identifiable as a law enforcement officer during this incident. He wore his official Idaho State Police uniform, operated a clearly marked patrol vehicle, and activated the emergency lights. His presence conveyed all the conventional markers of law enforcement authority: uniform insignia, vehicle

---

[26] Witte, L. (2025, June 21). *The priority of life model: A blueprint for safer police decisions*. Police1.

[27] NTOA - Tactical Response and Operations Standard for Law Enforcement Agencies – April 2018

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

**HAUG AFFIDAVIT--EXHIBIT A, P. 24**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 24

Page **24** of 59

markings, and emergency lighting, such that any reasonable person would immediately recognize him as a police officer executing official duties.

## *Response to the Call*

h. When the call was dispatched, it was reasonable for Trooper Rivera to respond promptly and take appropriate action to prevent Mr. Sequints from endangering himself and others. His behavior of jumping in front of oncoming traffic posed a clear and immediate risk of serious injury or death, not only to Mr. Sequints, but to unsuspecting motorists traveling at high speeds. A person suddenly entering the roadway creates a hazardous situation where a collision could fatally harm both the pedestrian and the passing drivers. Research and experience provide numerous tragic examples of drivers losing their lives after colliding with objects on roadways.

i. Trooper Rivera's response was appropriate and consistent with the training provided on responding to unpredictable and potentially dangerous situations. Officers are expected to rely on the information available to them at the time, including dispatcher input, scene observations, and evolving threats. Upon arriving at the scene and pulling into the median to investigate what looked like a red shirt in the roadway, possibly related to the dispatch call he was responding to, Trooper Rivera was unexpectedly confronted by Mr. Sequints, who stood up and engaged him within seconds. Given the sudden nature of the encounter and the immediate threat posed by Mr. Sequints' irrational behavior near active traffic, Trooper Rivera did not have the opportunity to

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 25 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 25**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 25

apply every aspect of training in a textbook manner. Instead, he acted quickly and reasonably using the resources, judgment, and decision-making skills developed through Idaho State Police's structured training protocols. Under these circumstances, his actions were both reasonable, practical, and consistent with law enforcement best practices.

j.  The National Traffic Incident Management Responder Training Program (TIMS) provides an excellent framework of best practices to enhance responder safety and facilitate the safe and coordinated clearance of traffic crashes and related incidents. It is designed primarily for roadway incidents involving collisions and the ensuing investigation, not for rapidly evolving law enforcement operations involving a potential threat to officer or public safety[28]. TIMS consists of context-dependent guidelines, not a rigid checklist. It does not carry the force of law and is not universally applicable to all roadway situations involving law enforcement. In this case, the initial event—a report of a pedestrian on the interstate—was appropriately assigned to a trooper for evaluation. Such calls are not unusual, and protocol would not call for proactive roadway closures prior to an on-scene assessment.

---

[28] Federal Highway Administration. (2013). National Traffic Incident Management Responder Training Program: 4-Hour Trainer Guide (Version 2, August 2013). Strategic Highway Research Program. p. 104.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **26** of 59
HAUG AFFIDAVIT--EXHIBIT A, P. 26
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 26

That is exactly what Trooper Rivera was engaged in when he was suddenly confronted by Mr. Sequints. What transpired after that point was not a traffic incident—it was a law enforcement encounter with a person behaving erratically and dangerously. The risk to the officer was clearly significant.

Traffic Incident Management protocols are intended for planned and coordinated responses under relatively stable conditions. In real-world policing, however, not all situations allow for the full, sequential application of those principles. When a threat emerges suddenly—such as a subject standing up from roadside cover or acting aggressively—responders must rely on their training, judgment, and experience to prioritize life safety over procedural guidelines.

While the National TIM Responder Training Program establishes best practices for roadway incident safety and coordination, it is not prescriptive to the point of limiting officer discretion during volatile and rapidly unfolding events. Expecting strict adherence to traffic incident protocols in the face of a dynamic public safety threat is both unrealistic and contrary to the spirit of TIMS, which recognizes the need for flexibility in responder actions.

k.  The Plaintiffs expert, Mr. McCraw, drafted a report, which I have reviewed. In his report Mr. McCraw is critical of Trooper Rivera's response:

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271
Page 27 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 27
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 27

**Opinion 1: Trooper Rivera Possessed Specific Knowledge of Tactical Risk, Scene Hazards, and Policy Obligations at the Time of the Encounter with Robert Sequints**

**Opinion:** At the time of his encounter with Robert Sequints, Trooper Miguel Rivera possessed specific and advanced knowledge—acquired through training, certification, and field experience—of the tactical risks presented by roadside encounters and the responsibilities imposed by Idaho State Police policy. He was aware of the dangers posed by a subject moving near active travel lanes, the need to use time and distance to manage such scenes, and the operational requirements for coordinated response and physical control. These known factors form the basis for assessing the reasonableness of Rivera's subsequent conduct and evaluating whether the actions taken were consistent with what a reasonably careful officer would do under similar circumstances.

*Figure 2: Expert report of Victor McCraw - Page 4*

I. The plaintiff's expert critique fails to account for the rapidly unfolding and unpredictable nature of the encounter Trooper Rivera faced. At the time of the incident, Trooper Rivera had just pulled into the median to inspect a red shirt lying along the roadside—he had not yet seen Mr. Sequints. It was only after Trooper Rivera exited his vehicle that Mr. Sequints suddenly stood up and acted aggressively toward the trooper. This unexpected engagement effectively eliminated the opportunity for any prolonged assessment or deliberate tactical planning.

Mr. McCraw's further criticism regarding Trooper Rivera's failure to don a reflective vest or implement formal traffic control[29] fails to account for the urgency and rapidly evolving nature of the situation. Further, it would have been inappropriate and

---

[29] Expert report of Victor McCraw - Page 8 and 9

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 28 of 59
HAUG AFFIDAVIT--EXHIBIT A, P. 28
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 28

contrary to good officer safety practices for Trooper Rivera to put on a reflective vest before he had an opportunity to assess the situation and determine what he was dealing with.

Law enforcement policies and training programs are designed to guide officer behavior under a wide range of conditions, but they are not rigid checklists to be followed without consideration for real-world variables. In fact, many policies and training materials, including those related to traffic incident management and tactical decision-making, explicitly or implicitly emphasize that procedures should be followed "when practical" or "when feasible." This language acknowledges that evolving, high-risk, or time-compressed situations may not allow for the full and sequential application of every standard.

Officers are expected to apply training with sound judgment, prioritizing safety, urgency, and the totality of the circumstances. This call involved a pedestrian reportedly running into traffic on a dark, high-speed interstate, an inherently dangerous and time-sensitive scenario. Expecting Trooper Rivera to delay his response to, implement coordinated traffic control measures, and develop a backup strategy before locating the subject, is not reasonable. His immediate priority was to respond quickly to evaluate the situation and address any hazards that would pose a danger to the motoring public. As soon as Trooper Rivera arrived on the scene, he was

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 29 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 29**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 29

immediately engaged by Mr. Sequints, giving him no time to implement the typical safety strategies associated with managing traffic incidents. The rapidly unfolding situation required immediate decision-making to address an immediate and unpredictable threat. In real-world patrol operations, officers must often make split-second decisions that prioritize life safety over procedural formalities, and in this case, Trooper Rivera's actions were consistent with that obligation.

m. While Trooper Rivera had training in roadside safety and coordinated response, those principles are intended to guide officer conduct when time and circumstances permit. Hindsight is a wonderful thing, but in this case, there was no advance warning, no opportunity to coordinate, and no time to implement textbook tactics. The situation escalated within seconds, and Trooper Rivera had to respond immediately to an erratic and potentially suicidal individual who was threatening to fight the trooper, entering traffic, and posing a risk not only to himself but to passing motorists and the trooper. Evaluating his actions with the benefit of 20/20 hindsight and suggesting that every element of training should have been perfectly executed in those brief, chaotic moments is inconsistent with the realities of policing[30].

---

[30] While it may be argued that proactively shutting down the interstate would have enhanced safety, such an action—especially at night and without a clear on-scene assessment—poses significant risks. High-speed roadway closures carry their own dangers and should only be undertaken when the situation clearly warrants it and when sufficient personnel and resources are in place to do so safely. In most cases, an officer would first respond to the scene to verify what is actually occurring before initiating such a disruptive and potentially hazardous action. Without specific, observable justification at the time, a full shutdown prior to arrival, is not customary, and would have been both impractical and unsafe.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 30 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 30
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 30

## *Use of Force*

n. Police officers are widely trained on topics, tactics, techniques, procedures, and policies related to the use of force. Among other topics, police officers are trained when force is appropriate, the quantity, and what type(s) of force may be proper. Idaho State Police troopers are trained that: *Idaho State Police Troopers use only the amount of force that is reasonable and necessary to protect life, affect a lawful arrest and/or gain control of any unlawful circumstance. Arrests are authorized in Idaho Code Title 19 Chapter 6[31].*

o. The evidence clearly shows that Trooper Rivera issued loud, clear verbal commands from the start: however, these verbal commands were ineffective in gaining Mr. Sequints' compliance as he was completely irrational and unresponsive to reason. Given this level of non-compliance, a reasonable police officer in similar circumstances would believe that some measure of force was necessary to secure the scene, control Mr. Sequints, and effect his arrest.

p. The plaintiff's expert, Mr. McCraw, opines: ***"Trooper Rivera, having engaged Sequints prior to addressing potential traffic hazards, observed signs of escalating confrontation but did not act to prevent it."*** And further states:

---

[31] IDAHO STATE POLICE PROCEDURE - 06.15 USE OF FORCE

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **31** of **59**

HAUG AFFIDAVIT--EXHIBIT A, P. 31

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 31

*"Despite perceiving a threat, Rivera neither withdrew nor moved to control or redirect the encounter.[32]"*

While the Plaintiff's expert states that Trooper Rivera "neither withdrew nor moved to control or redirect the encounter," the evidence reflects otherwise. Trooper Rivera did, in fact, take multiple actions to control the encounter. He gave clear verbal commands, attempted to detain the subject, and used reasonable force in response to the rapidly escalating threat. Additionally, recognizing the risk to others, he activated his emergency lights and utilized his flashlight to warn oncoming traffic—demonstrating his efforts to manage both the subject and the surrounding scene.

Furthermore, the assertion that Trooper Rivera failed to act in the face of an escalating confrontation overlooks a critical fact: Trooper Rivera had no prior knowledge that Mr. Sequints was concealed in the tall grass near the roadway. Upon arrival, Trooper Rivera was focused on investigating what appeared to be a red shirt near the shoulder of the road, possibly related to the dispatch call, when Mr. Sequints unexpectedly stood up from the tall grass and confronted him. The interaction began with surprise and unfolded rapidly, giving the trooper no opportunity to proactively address traffic hazards or implement standard safety procedures before being directly engaged.

---

[32] Expert report of Victor McCraw - Page 10

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **32** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 32**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 32

Officers are not obligated to retreat when faced with an imminent threat, as their primary duty is to protect the public and themselves from harm. Retreating could potentially escalate the situation or endanger others, particularly when a suspect is actively resisting and running into high-speed traffic or posing a threat of serious violence. Law enforcement officers are trained to confront and prevent threats to ensure safety, rather than retreating and risking further danger to innocent bystanders or themselves. Therefore, there was no apparent reasonably effective alternative to the use of force against Mr. Sequints.

The focus of the analysis must be on what Trooper Rivera perceived at the time and whether his belief was reasonable under the circumstances. Therefore, the question is not whether the trooper ultimately chose the correct tool, but whether his belief was reasonable based on the information available to him at the time. "This is precisely the point made in Graham v. Connor[33]. Because law enforcement encounters are often fluid and unpredictable, analyzing police conduct using hindsight is disfavored and inappropriate. In situations where an officer is unable to gain compliance with straightforward verbal commands, their ability to influence the individual psychologically is negligible. Consequently, the officer is likely compelled to respond tactically, focusing solely on the physical dynamics of the encounter rather than the subject's mental state.

---

[33] Graham v. Connor, 490 U.S. 386 (1989)

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **33** of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 33
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 33

q.   Criticism has been made of Trooper Rivera's verbal commands as being unclear or contradictory[34]. However, it is important to recognize that during a rapidly evolving situation, commands may appear inconsistent when they are in fact responsive to the subject's immediate and rapidly changing behavior. In this case, while video footage exists, the positioning of the patrol car limited the view, leaving only audio to interpret key moments of the encounter. For example, if an officer says, "raise your hands" and the subject instead advances toward them, the officer may immediately respond with "stop moving." Without being able to see the subject's actions, these near-simultaneous commands can sound contradictory when they are actually appropriate and reactive to rapidly unfolding events.

The audio recording of this incident is essential to understanding the urgency and complexity of what occurred. It captures the trooper's commands, escalating stress, and rapid sequence of events in real time—providing critical context that cannot be adequately conveyed through a written report. Any evaluation of the trooper's actions would be incomplete—and potentially misleading—without listening to the audio record in its entirety. It makes clear that this was a volatile and rapidly unfolding threat that required immediate action and decisions made under extreme pressure.

---

[34] Complaint, Case No. 4:24-cv-271 – Page 2 of 17

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **34** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 34**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 34

r. The decision to use force requires a careful assessment of the specific facts and circumstances of each case known to them at the time. It is well-established that officers may use a reasonable amount of force when making an arrest, with force options tailored to the perceived threat. Officers are not required to exhaust all lesser force options before using the one most likely to be effective. For instance, using a TASER or baton when confronted with an individual pointing a firearm at you would not be appropriate or reasonable. In this situation—along a high-speed interstate and involving a much larger individual—attempting to go hands-on would not have been a reasonable or safe tactical decision. Using physical force in this scenario would have posed significant risks to the officer and to passing motorists. Trooper Rivera's actions must be viewed within the context of a fast-developing, unpredictable, and hazardous environment.

The way in which someone is arrested must meet the standard of reasonableness, allowing officers discretion in determining the necessary force based on the situation as it appeared to them at the time, without the benefit of hindsight[35]. This approach is guided by the "Graham factors," established by the U.S. Supreme Court in Graham v. Connor[36], which require officers to consider the severity of the crime, the threat posed by the suspect, and any attempts to resist or flee. Officers also consider various

---

[35] The issue of reasonableness and Graham v. Connor is emphasized from the outset of the Idaho State Patrol Trooper training.

[36] Graham v. Connor, 490 U.S. 386 (1989)

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 35 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 35
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 35

other factors, such as the suspect's physical size, potential weapons, and the risks posed by a prolonged struggle.

In these rapidly evolving situations, officers make decisions based on the information available at the time, ensuring their actions align with legal standards and training designed to address the complexities of each encounter.

The core principle is that force should be both objectively reasonable and necessary. During training, officers are taught arrest techniques that are consistent with these standards and are considered tactically, medically and legally sound.

s.  Idaho State Police procedure[37] outlines that troopers are authorized to use reasonable, non-deadly force when necessary to carry out their duties. Specifically, the procedure states that troopers may use only that force which is objectively reasonable to:

a) **defend themselves,**

b) **defend others**,

c) **effect an arrest or detention,**

---

[37] IDAHO STATE POLICE PROCEDURE - 06.I5 USE OF FORCE

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **36** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 36**

d) **prevent escape, or**

e) **overcome resistance.**

t. Idaho Code[38] prohibits pedestrians from entering or walking along the Interstate, as doing so poses a serious hazard to both the individual and the motoring public. This statute exists to help ensure that motorists have a clear, safe and unobstructed path of travel. Furthermore, once Mr. Sequints ran onto the interstate and ignored Trooper Rivera's lawful commands, his actions went beyond a simple infraction violation. Idaho Code § 18-705 makes it a misdemeanor to knowingly obstruct, delay, or resist a peace officer carrying out their duties. By refusing to comply, Mr. Sequints not only put himself and others in danger, but also clearly met the legal threshold for obstructing an officer, a misdemeanor under Idaho law.

u. Based on the information that was provided, it would be clear to a reasonable officer that Mr. Sequints was jumping in front of vehicles with the intent of harming himself. Trooper Rivera was aware of this possibility, and upon arrival witnessed Mr. Sequints' irrational actions, which made it clear Mr. Sequints was trying to harm himself. It is reasonable that Trooper Rivera would take reasonable steps to prevent Mr. Sequints from running into traffic. It Is recognized that a law enforcement officer may use

---

[38] Under Idaho Code § 49-708, pedestrians are prohibited from walking or standing on controlled-access highways, including interstates, except in emergencies or when directed by a peace officer.

reasonable force to protect the life of another—and this case is no exception. Given the circumstances, it was reasonable for Trooper Rivera to believe that probable cause existed to place Mr. Sequints under arrest. In addition to fulfilling his community caretaking role by attempting to prevent Mr. Sequints from harming himself, Trooper Rivera also directly observed conduct constituting a misdemeanor offense: unlawfully entering the interstate refusing to comply with lawful commands. These actions gave Trooper Rivera sufficient legal grounds to initiate a lawful arrest, both to protect public safety and to uphold the law.

Trooper Rivera's actions were consistent with the policy's intent[39] to prioritize public safety while allowing for the necessary flexibility to address potential threats in the field. The decision to use force to detain Mr. Sequints was lawful, consistent with Idaho State Police procedure, and reasonable under the circumstances. Trooper Rivera's primary objective was to apprehend Mr. Sequints, overcome his resistance, and prevent him from causing harm to himself or others.[40].

v.  Some may evaluate this case by questioning whether Trooper Rivera strictly followed every aspect of his training and made tactically flawless decisions. However, in an incident like this, I believe such an analysis is unreasonable, incorrect, and inconsistent

---

[39] IDAHO STATE POLICE PROCEDURE - 06.I5 USE OF FORCE

[40] Deposition of Trooper Miguel Rivera, JR - Page 110, line 11-16.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 38 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 38**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 38

with the law[41]. There is no "*bright line rule"* in situations that are unfolding in seconds, like this one.

The U.S. Supreme Court has explicitly rejected the notion that an officer's failure to follow specific training or employ ideal tactics prior to using force should be a deciding factor, as demonstrated in cases such as City and County of San Francisco v. Sheehan (2015)[42] and County of Los Angeles v. Mendez (2017)[43].

The proper standard is whether Trooper Rivera acted reasonably under the totality of the circumstances. Given the immediate threat and lack of warning, his response was both reasonable and within the expectations of professional policing.

Mr. Sequints' decision to run onto the interstate ultimately set in motion the tragic events that led to his death. In situations like this, officers must respond to unpredictable behavior with a reasonable and measured approach to ensure public safety and effective apprehension. During the incident, Mr. Sequints exhibited irrational behavior consistent with suicidal intent. After the initial TASER cycle ended,

---

[41] It is important to recognize the inherent limitations of 20/20 hindsight when evaluating an officer's actions. Courts have repeatedly emphasized that officers must be judged based on the information available to them at the time of the incident—not with the benefit of hindsight.

[42] City & County of San Francisco v. Sheehan, 575 U.S. (2015).

[43] County of Los Angeles v. Mendez, 581 U.S. (2017).

he stood up and ran into traffic, creating a significant threat to himself and others. Further, he remained in the active traffic lane despite repeated warnings and commands from Trooper Rivera to move.

The force used by Trooper Rivera was a reasonable effort to prevent further harm and save Mr. Sequints' life. There is no evidence that Mr. Sequints was under the influence of the TASER at the time he was struck by the passing motorist. In fact, the evidence is to the contrary. Mr. Sequints was able to jump up and run into the roadway, demonstrating he was not immobilized by the TASER.

## *Use of the TASER*

w.  After unsuccessfully attempting to gain compliance through loud, verbal direction, the next reasonable step for Trooper Rivera was to use his TASER to control Mr. Sequints' resistive behavior. Lesser force options had no effect in restraining Mr. Sequints and preventing him from assaulting Trooper Rivera or running into traffic. The Idaho State Police Procedure on the use of TASERs[44] outlines that the use of a Conducted Energy Device (CED)[45] is appropriate under certain circumstances, including when necessary

---

[44] IDAHO STATE POLICE PROCEDURE - 06.I6 WEAPONS, The Idaho State Police weapons policy includes specific guidelines governing the use, deployment, and limitations of TASERs as a less-lethal force option.

[45] A Conducted Energy Device (CED) is a less-lethal weapon designed to incapacitate a subject through the application of electrical energy that disrupts voluntary control of muscles. The most recognized CED is the TASER, which is actually a brand name owned by Axon Enterprise, Inc. Although "TASER" is often used generically, it refers specifically to devices manufactured by that company.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 40 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 40**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 40

to **prevent a subject from harming themselves or others**—exactly the type of situation Trooper Rivera was facing in this case. Additionally, Trooper Rivera is a certified TASER instructor who has received training in both TASER use and handling suicidal subjects. His qualifications reflect a strong understanding of the TASER's capabilities and proper deployment[46].

x.   As a past certified TASER user, instructor and armorer, I am aware that the TASER is a safe and effective way to bring a resistive subject into custody. When a subject refuses to comply, the law enforcement officer must bring things under control, and they have a number of tools at their disposal. In this situation on the Interstate, traditional law enforcement tools such as arm locks, choke holds, batons, and hand-to-hand techniques were not a reasonable option. The TASER is not only a less-lethal force option but also functions as a pain compliance tool. When deployed, it delivers a neuromuscular incapacitation effect and causes immediate, localized pain, which often prompts a subject to cease resistance and comply with officer commands[47]. In many situations, the mere application or even the threat of the TASER, leads to behavioral change allowing officers to safely take individuals into custody without escalating to higher levels of force.

---

[46] Idaho State Police - TASER REFRESHER SCENARIO TRAINING, Exhibit 10

[47] Deposition of Trooper Miguel Rivera, JR - Page 110, line 6-10. Trooper Rivera has experienced this in past uses of the TASER, and this is a reasonable expectation.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 41 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 41
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 41

y.  Once the TASER cycle ends, the effects of the TASER cease immediately and the subject typically experiences a rapid recovery of motor function, allowing them to move, respond, and follow commands[48]. This temporary effect makes the TASER an effective tool for gaining control without causing lasting physical harm[49].

z.  Trooper Rivera deployed his TASER, and the five-second cycle concluded at 11:28:58. Mr. Sequints was struck by a vehicle at 11:29:54, approximately 56 seconds after the TASER cycle ended. During that time, Mr. Sequints recovered from the TASER's effects, stood up, ran into the northbound lanes of Interstate 15, and ultimately laid in the roadway[50]. Before being struck, he was observed propped up on his elbows and looking back toward oncoming traffic, before lowering himself back down[51]. Despite Trooper Rivera's efforts, the rapid sequence of events left no reasonable opportunity to prevent the tragic outcome.

aa. Mr. McCraw, the plaintiff's expert, is critical of Trooper Rivera's decision to deploy the TASER during the incident. In his report he asserts that the use of force was not

---

[48] On page 68, lines 1–4 of his deposition, Trooper Rivera describes his personal experience of being tased multiple times during training, as well as deploying the TASER on numerous individuals throughout his career. He explains that in all scenarios, individuals typically recover immediately once the TASER cycle ends. This observation is consistent with my own experience, having deployed the TASER on approximately 50 individuals and having personally been exposed to its effects multiple times. In each instance, the effects ceased as soon as the electrical cycle concluded, allowing for rapid, full recovery of motor function and responsiveness.

[49] Capt. Greg Meyer (ret.), TASER Basics: What Every Judge and Jury Should Know, Police1, October 27, 2011.

[50] Deposition of Trooper Miguel Rivera, JR - Page 112, line 6-14.

[51] DEFS 000184 22-P12255 Report.pdf, Page 31

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 42 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 42
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 42

warranted under the circumstances, and that Trooper Rivera did not have proper plans in place to address what occurred, and ultimately, his failure to formulate proper plans contributed to the death of Mr. Sequints. Mr. McCraw states:

*"The facts in this opinion show that Rivera was aware of the conditions he faced and the dangers his decisions posed. The roadway, traffic, and the subject's unpredictable behavior were not new threats—they were specifically anticipated in dispatch, agency policy, and Rivera's own tactical reasoning. Still, he deployed a TASER without support, did not reposition for safety, and took no steps to control traffic or mitigate the risks of incapacitation in a live lane.*

*Rivera's testimony confirms that he recognized these dangers. He referred to "officer safety 101," explained his fear of being taken down in the roadway and admitted that retrieving his reflective vest was never prioritized. He knew the risk, saw it unfold, and failed to adapt. These choices demonstrate a disregard for fundamental safety principles and placed the burden of consequence on the subject.*
*In my professional opinion, these omissions reflect a failure to apply training and judgment in a high-risk environment where better options were available."*

This, and much of the commentary from Mr. McCraw, fails to consider the real-world, fast-paced, and rapidly evolving nature of the incident. Instead, it applies an idealized

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **43** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 43**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 43

standard of conduct that is completely unrealistic under the dynamic and unpredictable conditions Trooper Rivera faced.

Based on my review of the available evidence, the deployment of the TASER was reasonable, measured, consistent with Idaho State Police procedure and aligned with accepted law enforcement standards.

Even the plaintiff's expert, Mr. McCraw, acknowledges the effectiveness of the TASER in gaining compliance. While he criticizes Trooper Rivera for deploying the TASER in the first place, arguing it was inappropriate under the circumstances, he later contradicts this position by asserting that Trooper Rivera should have deployed a second TASER cycle. In his report, Mr. McCraw notes that Mr. Sequints stood up after the initial TASER deployment and Mr. McCraw criticizes the trooper for not initiating a second tasing during the approximate 56 seconds before the fatal collision. It is important to note that if Trooper Rivera deployed a second TASER cycle as suggested by Mr. McCraw, it is virtually certain that Mr. Sequints would have gone down in the roadway. This inconsistency highlights a contradiction in Mr. McCraw's reasoning and overlooks the rapidly evolving nature of the incident, which left little to no opportunity for redeployment.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **44** of 59
HAUG AFFIDAVIT--EXHIBIT A, P. 44
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 44

**Commentary 4.4.4:** Rivera deployed the TASER at 11:28:58. Sequints was struck by a vehicle at 11:29:54. During these 56 seconds, Rivera did not attempt to re-engage the TASER trigger or initiate a second discharge to prevent Sequints from getting up. Rivera acknowledged that he did not deploy a second TASER cycle. "If I would have pulled the trigger again, then it would have deployed another cycle." *(TIMESTAMPED RIVERA 042125 PDF.pdf, p. 108; AXON Taser Certification Course.ppt, Slide 48; Exhibit 6 - Gooch.pdf, p. 2)*

*Figure 3: Expert Report of Victor McCraw, Page 19*

It is unreasonable for the plaintiff's expert to criticize Trooper Rivera for using the TASER under the circumstances, and then, fault him for not using it a second time. This contradictory analysis undermines the credibility of the critique and reflects a failure to appreciate the split-second decision-making required in rapidly evolving situations.

Following the initial deployment of a TASER, standard law enforcement practice is to pause and assess the subject's response—specifically, whether the subject is now compliant or willing to follow commands. Continued or immediate redeployment is not automatic and must be evaluated in the context of the subject's actions and the surrounding environment. In this case, it is my understanding that Mr. Sequints ran into the roadway after the initial TASER cycle. Under such circumstances, attempting to redeploy the TASER would have created an unacceptable risk of incapacitating him in the middle of active traffic, potentially resulting in serious injury or death. Given

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 45 of 59
HAUG AFFIDAVIT--EXHIBIT A, P. 45
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 45

the totality of the situation, the decision not to reengage the TASER was appropriate and consistent with accepted officer safety practices.

Within 56 seconds following the initial TASER deployment, Mr. Sequints stood up and ran onto the interstate. Given the speed at which events unfolded, and the fact that Trooper Rivera multi-tasked in an extremely stressful and chaotic situation, he had no reasonable opportunity[52] to redeploy the TASER before Mr. Sequints entered traffic. Criticizing the trooper for not initiating a second cycle in that brief window ignores the realities of human reaction time and rapidly evolving field conditions.

Although it is unfortunate that the application of the TASER did not work to subdue Mr. Sequints, that does not mean the application was inappropriate. It was Mr. Sequints' actions—specifically his decision to stand up and run into traffic after the TASER deployment had concluded[53]—that placed him in harm's way, not the use of the TASER. The use of a less-lethal option, such as the TASER, was appropriate to attempt to bring the situation under control.

---

[52] Deposition of Trooper Miguel Rivera, JR - Page 66, line 1-25.

[53] Deposition of Trooper Miguel Rivera, JR - Page 112, line 5-23.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 46 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 46

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 46

## ***De-Escalation***

bb. Trooper Rivera had received de-escalation training and was familiar with its principles through both formal instruction and years of experience[54]. He applied this training and experience during his interaction with Mr. Sequints, acting reasonably in his efforts to gain compliance.

cc. In reviewing the dash camera audio, Trooper Rivera can be heard attempting to de-escalate the situation by delivering clear, loud verbal commands to Mr. Sequints, stating, "Don't move...stop moving...stop" and "let me see your hands right now."[55] Mr. Sequints ignored these commands and continued moving toward the interstate, threatening the trooper with his verbal and non-verbal actions.

Trooper Rivera used proper de-escalation and followed the longstanding tactic of communicating his expectations by giving loud, clear commands to comply, and when that did not work, he transitioned to another tool, his TASER. Based on this being a rapidly evolving incident occurring within seconds, his de-escalation options were limited. The use of the TASER was another attempt to de-escalate and counter Mr. Sequints' violent actions.

---

[54] Deposition of Trooper Miguel Rivera, JR – Page 44, line 1-18.

[55] Idaho State Police Dash Camera Video from Trooper Rivera's patrol vehicle – 0:06

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025
Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **47** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 47**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 47

dd. While de-escalation[56] is often a valuable tactic, if overemphasized or improperly applied, it can place officers in unnecessary danger, particularly when dealing with an aggressive or suicidal subject. There is a risk that officers may rely too heavily on de-escalation strategies in situations that demand immediate action, potentially increasing the threat to officers, innocent bystanders, and motorists. In dynamic, high-risk encounters, such as when a subject attempts to engage an officer in a physical confrontation in the middle of an interstate, it is reasonable to anticipate that hesitation or delayed action could result in serious harm or death, not only to the officer but also to passing motorists. Consequently, it is stressed in training that continued de-escalation is not appropriate in every situation and officers are not required to use these techniques in every instance. If the individual poses a threat of injury or death to the officer or another, the officer must be permitted to use the proportional level of force necessary to safely resolve the situation. Using improper de-escalation techniques with a violent person in an interstate may result in an officer being seriously injured or killed[57].

In this case, Trooper Rivera attempted to de-escalate the situation by using loud, clear, verbal control, but Mr. Sequints chose non-compliance and continued his

---

[56] De-escalation in law enforcement is the practice of using a wide range of communication and tactics to reduce the intensity of a potentially dangerous situation, ultimately reducing the need for force.

[57] IACP Policy Center – Active Attack - https://www.theiacp.org/resources/policy-center-resource/active-attack

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 48 of 59

HAUG AFFIDAVIT--EXHIBIT A, P. 48
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 48

behavior that is best described as provocative and life threatening. It was clear that Mr. Sequints was not going to comply. When he refused to follow directions, Mr. Sequints created a dangerous situation for everyone involved.

### *Policy and Procedure*

ee.  As part of this review, I was provided with a copy of the Idaho State Police Use of Force Procedure[58] and the Idaho State Police Procedure on Weapons[59]. This regulations manual governs the conduct of troopers and supervisors regarding use of force in the performance of their duties.

ff.  In my review, it is clear that Trooper Rivera acted in accordance with the policies of the Idaho State Police. This conclusion is supported by the findings of the Idaho State Police internal personnel investigation and multiple reviews conducted by department personnel. Additionally, the Bannock County Prosecutor reviewed this matter and determined that Trooper Rivera's actions did not violate any criminal laws. The prosecutor concluded that Trooper Rivera acted within the scope of his duties and that there was no basis for criminal charges. These internal and external reviews

---

[58] IDAHO STATE POLICE PROCEDURE - 06.I5 USE OF FORCE

[59] IDAHO STATE POLICE PROCEDURE - 06.I6 WEAPONS, The Idaho State Police weapons policy includes specific guidelines governing the use, deployment, and limitations of TASERs as a less-lethal force option.

confirm that Trooper Rivera's actions were lawful, appropriate, and consistent with his training and departmental procedure.

### *Investigation*

gg. In my review of the evidence, a thorough and unbiased investigation was conducted in this case. The investigation was carried out by the Pocatello Police Department and the Bannock County Sheriff Department. I found no irregularities in their investigation.

hh. Upon completion of the investigation, Steven Herzog, the Bannock County Prosecutor, reviewed the matter on September 21, 2022, and concluded that the use of force was reasonable[60].

ii. While Mr. McCraw is critical of the investigative process[61], the elements he claims were lacking, such as a non-written interview, a video walkthrough with the involved officer, and a full scene recreation, are not required by policy and are not standard across law enforcement agencies. The investigation of this case was conducted by an independent third-party agency, was thorough in scope, and provided a clear and detailed account of the events leading to Mr. Sequints' death. In fact, Trooper Rivera

---

[60] Use of Force Review Memorandum, Bannock County Prosecutor, September 21, 2022.

[61] Expert Report of Victor McCraw, Page 26

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 50 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 50**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 50

provided both a written statement and a recorded audio interview as part of the investigative process. Mr. McCraw's expectations appear to be based on his personal preferences and experiences rather than any established investigative standard. The absence of the specific components he lists does not render the investigation deficient and does not undermine its findings.

Based on the findings of the investigation, as well as my analysis of Trooper Rivera's actions, I have reached the following conclusions regarding the reasonableness of the force used.

## Conclusion

By any definition, this was a rapidly evolving, tense, and uncertain situation with a tragic outcome, one dictated by Mr. Sequints' actions, not by Trooper Rivera's. Despite this, the plaintiff's expert offers a critique of Trooper Rivera for failing to control traffic, relying on ineffective tactics, deploying a TASER without a control plan or support, taking no physical action after TASER use, and demonstrating poor planning in response to escalating risks. Each of which relies heavily on hindsight and assumes a level of clarity, control, and planning that simply did not exist in the moment. The circumstances surrounding the use of the TASER have been addressed earlier in this report. With that analysis complete, attention now turns to the criticisms concerning traffic control and scene management.

Plaintiff's expert argument that Trooper Rivera failed to implement appropriate traffic control measures and demonstrated poor planning in response to escalating risks prior to engaging Mr. Sequints, are unreasonable. While McCraw's critique is extensive, it reflects an unrealistic expectation of precision planning in a chaotic, rapidly evolving, and highly unpredictable environment. His analysis applies the benefit of hindsight rather than considering what Trooper Rivera actually knew—or could reasonably have known—at the time.

At the outset, the original 911 caller reported a male subject "jumping in front of cars" in the southbound lanes[62] of Interstate 15. While Trooper Rivera was en route, updated dispatch information indicated the subject had moved to the northbound lanes[63]. This significant shift in location highlights a critical reality: Mr. Sequints was mobile, erratic, and unpredictably traversing both directions of the Interstate. When Trooper Rivera arrived, Mr. Sequints was ultimately located in the center median, further emphasizing that the subject was not stationery and that the hazard was not confined to a specific lane or direction.

Given the nature of Interstate 15, a high-speed, limited-access freeway with multiple travel lanes in both directions, it would have been unreasonable for Trooper Rivera to know, in that moment, which side of the Interstate posed the most immediate threat. Had he shut down the northbound lanes, and Mr. Sequints ran back into the southbound lanes and been struck (as the initial 911

---

[62] 6-23-22 11.18.46PM Emergency (911-7) - 3.wav | DEFS 000187 06-23-22 11.20.35PM Radio (VAC_ISP).wav

[63] DEFS 000428-000431 CAD record from incident.pdf

---

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 52 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 52**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 52

caller feared), McCraw's critique would likely shift to faulting Rivera for failing to anticipate that possibility. This underscores the challenge of managing an evolving hazard without clear boundaries or a fixed subject location.

Trooper Rivera was operating alone. Attempting to initiate full lane closures in both directions of the Interstate would have required additional resources and time that were not immediately available. To suggest that Trooper Rivera should have delayed his response so that these resources could be assembled and shut down the interstate before contact is not realistic. Further, shutting down an interstate in both directions during darkness endangers the motoring public and to do so without first assessing the situation, would also be unrealistic. In the seconds between Rivera's arrival and the subject's fatal movement into traffic, there was no reasonable opportunity to implement comprehensive scene control without neglecting the immediate risk posed by Mr. Sequints' behavior, including aggressive posturing and active resistance.

While best practices for traffic incident management advocate for scene stabilization and traffic diversion when feasible, those standards assume a level of situational control, resource availability, and time that simply did not exist during this incident.

In sum, while McCraw criticizes what was not done, he does so without adequately acknowledging the volatile, fast-moving, and uncertain conditions Trooper Rivera faced. Trooper Rivera's decisions must be evaluated based on what he reasonably perceived and knew at the

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **53** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 53**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 53

time, not through the lens of outcomes or hindsight. Expecting a lone officer to simultaneously manage an unstable subject and fully control both directions of Interstate traffic is neither practical nor consistent with the realities of field policing. Given the immediacy of the threat and the unpredictable behavior of Mr. Sequints, waiting for backup was not a reasonable or viable option. The situation required immediate action, not delay, and Trooper Rivera acted within the bounds of his training and responsibility under rapidly evolving circumstances.

Having addressed the criticisms related to traffic control, it is important to now consider the use of force in this case.

It is clearly established that an officer may use a reasonable amount of force when making an arrest. The way in which a citizen is arrested must meet the reasonableness standard when they are taken into custody by a police officer. It has been held that a police officer has discretion to determine the amount of force required, within certain limits, under circumstances as they appeared to them at the time of the action.

The Fourth Amendment reasonableness inquiry is whether the officer's actions are objectively reasonable considering the facts and circumstances confronting them, without regard to their underlying intent or motivation. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 54 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 54**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 54

the amount of force necessary in a particular situation. In May 1989, the U.S. Supreme Court ruled in the case of Graham v. Connor, 490 U.S. In this decision, The Court recognized that police officers are often thrown into stressful, chaotic and life-threatening situations. The officer's actions must be reasonable based on the information known to the officer at the time of that action. That action must also be reasonable to a similarly situated police officer placed in a similar situation. The U.S. Supreme Court reasoned that "the reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight.

The Graham v. Connor decision is very relevant to my opinion and the actions of Trooper Rivera in this matter. The wording in these decisions does not simply establish a standard by which all law enforcement officers are trained and judged. These decisions articulate the specific wording, and the only standard, by which police officers are trained, and police policy is developed concerning police use of force issues. In light of Graham v. Connor, 490 U.S. and other Court decisions, all police training organizations and law enforcement agencies have developed use of force training and policies which mirror these decisions.

Based on my review of this case, it is my opinion that Trooper Rivera responded appropriately given the information available to him at the time.  In this case, he was responding to a report of a pedestrian posing a hazard by jumping in front of traffic on a dark interstate at night, an inherently dangerous and unpredictable situation. Once Trooper Rivera arrived, Mr. Sequints was

not immediately visible, as he was lying in the tall grass. Mr. Sequints' sudden and aggressive appearance, standing up unexpectedly, combined with erratic and noncompliant behavior, including abrupt movements and refusal to follow clear verbal commands, created an immediate threat to the trooper and to passing motorists. The rapidly unfolding nature of the encounter gave Trooper Rivera no time to execute a textbook response, requiring him to rely on his training, judgment, and immediate assessment of the danger. Trooper Rivera's use of verbal commands, and eventually a TASER, a less-lethal option, was a reasonable and measured attempt to gain control of the situation and prevent harm.

As with any use of force incident, it is important to evaluate the officers' actions based on what they were trained and knew at the time, rather than with the benefit of hindsight. In the moment he decided to use force, Trooper Rivera reasonably believed that Mr. Sequints posed a serious threat of death or serious bodily harm to himself and potentially to others. In deploying the TASER, Trooper Rivera was acting in an effort to save Mr. Sequints' life by preventing him from running into traffic and endangering himself and passing motorists.

All available evidence indicates that Trooper Rivera acted in accordance with his training, departmental policy, and the legal standards set forth in Idaho law. He faced a volatile and unpredictable situation that required split-second decisions under highly stressful conditions. While training documents and policies may outline ideal procedures such as scene control, backup coordination, or safety equipment use, these guidelines are prefaced with phrases like

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page 56 of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 56**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 56

"when practical" or "when possible," acknowledging that real-world conditions do not always allow for strict adherence to every step. In rapidly evolving situations, officers must prioritize life safety and act based on their judgment and experience. Given the totality of the circumstances, the use of force in this case was objectively reasonable.

Based on the evidence and the context provided, Trooper Rivera acted within the bounds of accepted police practices and his actions were reasonable and necessary under the law considering the information he had at the time of the incident.

R. Scot Haug

*R Scot Haug Jr*

---

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **57** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 57**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 57

## Summary of Expert Findings[64]

1. **Trooper Rivera's response was consistent with training and policy.**

   His actions aligned with Idaho State Police policy, use-of-force standards, and nationally recognized law enforcement practices. He used verbal commands and a TASER in a manner consistent with his training and certification. The TIMS protocol was not applicable in this case, as the circumstances did not align with its intended use or operational context.

2. **The situation was rapidly evolving and unpredictable.**

   Upon arrival, Mr. Sequints was not visible, having been concealed in tall grass. He suddenly stood up and aggressively engaged Trooper Rivera, leaving no reasonable time to implement textbook scene control.

3. **The TASER deployment was appropriate and reasonable.**

   The use of a Conducted Energy Device (TASER) was a reasonable less-lethal option in response to Mr. Sequints' erratic, noncompliant, and potentially dangerous behavior.

4. **There was no reasonable opportunity for a second TASER deployment.**

   Given the speed at which events unfolded and the totality of circumstances, Trooper

---

[64] This is a summary only; please refer to the full report for complete details and the expert's opinion.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **58** of 59

**HAUG AFFIDAVIT--EXHIBIT A, P. 58**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 58

Rivera did not have a practical or safe opportunity to initiate a second TASER cycle

before Mr. Sequints entered traffic.

5. **Multiple reviews found the use of force justified.**

The incident was reviewed by the investigating agency, Idaho State Police internal

affairs personnel, Idaho State Police command staff, and the Bannock County

Prosecutor. On September 21, 2022, Prosecutor Steven Herzog concluded the use of

force was reasonable and lawful.

6. **Plaintiff's expert criticisms are speculative and unrealistic.**

The plaintiff's expert applies theoretical standards without fully accounting for the

dynamic and life-threatening conditions faced by Trooper Rivera. Real-world policing

often requires rapid decision-making in circumstances where ideal procedures are not

feasible.

7. **Trooper Rivera acted professionally and within legal standards.**

Based on the totality of evidence, his conduct during the incident was appropriate,

justified, and consistent with what would be expected of a reasonably trained officer in

a similar situation.

Defendant's Expert Witness Report – R. Scot Haug – 6/25/2025

Estate of Robert Thomas Sequints, et al. v. ISP (Miguel Rivera) et al.- United States District Court, For the District of Idaho - Case No. 4:24-cv-271

Page **59** of **59**

**HAUG AFFIDAVIT--EXHIBIT A, P. 59**

DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 59



*Public Safety Insight, LLC*

*A Police Practices Consulting Firm*

# R. Scot Haug
### *Police Practices Consultant*

## Qualifications

I was employed by the Post Falls Police Department for thirty-two (32) years and served nearly ten (10) years as the Chief of Police. I retired on March 31, 2018.  As the Chief of Police, I was responsible for the operation and oversight of approximately 100 employees and volunteers who worked for the Department. I oversaw and directed all activities of the Police Department, including the development of policy and procedure for the Department. I frequently reviewed use of force reports and determined the appropriateness of force used by officers. Additionally, I was actively involved in technology-related projects within the Department and across the country. My responsibilities included strategic planning for the use of resources, coordinating the activities of the department with those of other local departments, and ensuring that services provided, and development plans were of the highest quality.  I was responsible and accountable for accomplishing departmental planning and operational goals and objectives as well as furthering City goals and objectives within general policy guidelines.

I began my career with the Post Falls Police Department in 1986 as a volunteer Police Officer, and I held the positions of Reserve Officer, Reserve Sergeant, Code Enforcement Officer, Patrol Officer, Field Training Officer, Sergeant, Administrative Sergeant, Lieutenant, Information Technology Administrator, Captain and most recently, as the Chief of Police.

 I hold an AAS degree in Law Enforcement and an AAS in Administration of Justice from North Idaho College. I am also a graduate of the 201st Session of the FBI National Academy in Quantico Virginia.   Most recently, I have served as President and Secretary/Treasurer of the Montana – Idaho Chapter of the FBI National Academy Associates and have been actively involved in the Board of Directors.  In addition, I have Idaho Peace Officer Standards & Training (POST) certification, plus the Intermediate, Advanced, Supervisory, and Management certificates. I am a former Arrest Techniques Instructor for POST, and for nearly ten years I served in an advisory role with North Idaho College as the Chairman of the North Idaho College Law Enforcement Program Advisory Committee. This committee provides leadership and recommendations to the College for the Law Enforcement Program

I have been an Idaho POST instructor since 1992 and served as the primary Use of Force, Arrest Techniques and Handcuffing Instructor at North Idaho College for nearly ten years. In addition, I was the primary Arrest Techniques and Handcuffing Instructor for the North Idaho Reserve Academy. As SWAT Commander, I received both the SWAT basic and team commander training from the National Tactical Officer Association. I have consulted with numerous law enforcement agencies regarding use of force issues, and I have lectured to thousands of law enforcement officers and executives around the country on officer-safety-related issues and reducing agency risk. Currently, I am an Idaho Peace Officer Standards & Training instructor in Officer Survival Techniques.

My extensive training in the use of force and arrest techniques includes the use of handcuffs and the techniques used by officers to apply them. I have taught hundreds of law enforcement officers in the proper techniques an officer should use to place an arrestee safely and legally into custody. As a committee member for Idaho POST, I was one of twelve officers statewide to participate in the standardization and development of the Idaho Arrest Techniques and Handcuffing Curriculum for the State of Idaho. The manual

*Offices in California and Idaho*
*publicsafetyinsight@gmail.com*
*Mailing address: P.O. Box 1011 ~ Post Falls, Idaho l 83877*

HAUG AFFIDAVIT--EXHIBIT A - P. 60
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 60

we developed has been used to train thousands of police officers across the state, and POST still uses much of the information today.

I am currently a Below 100 core trainer. Below 100 is a nationwide officer safety and risk management training program focused on reducing line-of-duty deaths and officer injuries. I have presented at many law enforcement conferences and trained thousands of law enforcement officers across the US and Canada, providing both basic and "train the trainer" instruction to line-level officers and agency executives.

I was selected to serve as a representative of the Statewide Lexipol Model Policy Board assisting Idaho Counties Risk Management Program and Lexipol in developing a statewide model policy for the state of Idaho.

As a Board Member for the Idaho Chief of Police Association, I most recently served as the President for the Association for two years.

In addition to my work on use of force matters, I consult on the use of technology in law enforcement. I have worked on numerous law-enforcement-related technology projects, from design through implementation and actual physical installation of the technologies. I have served as a past member of the Department of Justice, National Institute of Justice (NIJ) Technical Working Group as a technical expert providing consulting and research on several national technology projects. I recently served on an International Association of Chiefs of Police (IACP) License Plate Recognition (LPR) subcommittee as one of several members developing LPR standards for the Department of Justice. I also worked with the IACP to develop their model policy on the use of LPR; this model policy is used across the country as a guideline in using LPR. Through webinars, training conferences and various in-person and telephonic meetings, I have consulted with over 100 law enforcement agencies on technology- related projects.

In my work with body-worn camera technology, I have assisted in the research, purchase and implementation of successful video technology projects, including both in-car and body-worn camera technology. I am recognized as an expert in body-worn technology, and I have lectured at law enforcement trainings on multiple occasions about its successful implementation and use.  I have also invented components related to body-worn camera technology and secured a provisional patent from the United States Patent and Trademark Office.

I have written several magazine articles on officer safety as well as the use of technology in law enforcement.  I have been invited to present at several major U.S. conferences on technology, including by Computer World magazine, the FBI National Academy Associates, and the IACP.

I have served as a technology consultant to organizations such as Lockheed Martin, Booz|Allen|Hamilton, National Institute of Justice (NIJ) and the IACP.

I have been responsible for implementing many emergency services technology programs including a citywide LPR project with both fixed and mobile installations. The technology projects have been featured in *Law Officer* magazine, *Computer World* magazine, *CEO* magazine, and by the Harvard University Government Innovators Network.

As an appointee of former Governor Otter, I served as a commissioner on the Emergency Communications Commission as a representative of the Idaho Chiefs of Police Association. The Commission, assisted cities, counties, ambulance districts and fire districts in the establishment, management, operations and accountability of consolidated emergency communications systems. Additionally, I was appointed by Governor Otter to serve as a POST Commissioner. In that role, I assisted with establishing and enforcing training, education, and employment standards of peace officers across Idaho.

## Professional Experience

**2009 – 2018**    **Chief of Police**
Post Falls Police Department                                    Post Falls, Idaho

Chief of Police for the Post Falls, Idaho Police Department. The Department has
approximately 100 employees and volunteers and provides law enforcement service to
a community of approximately 35,000 residents.

**2016 - 2018**    **Idaho Peace Officer Standards and Training Commissioner**
Idaho Peace Officer Standards and Training                    Boise, Idaho

Appointed by Governor Otter to serve as a commissioner on the Idaho Peace Officer
Training (POST) Council. POST Council members represent law enforcement and
organizations within the law enforcement community. Our principal purpose is to
establish and enforce the training, education, and employment standards of peace
officers statewide.

**1995- 2006**    **Part-Time Instructor - Law Enforcement Program**
North Idaho College                                            Coeur d'Alene, Idaho

Primary instructor for Arrest Techniques and Handcuffing instruction, which included
the instruction of self-defense techniques, handcuffing, use of force, use of impact
weapons, and Taser use. Responsible for self-defense instruction to all students in the
law enforcement program. Also provided Arrest Techniques training to hundreds of
Reserve Police Officer candidates.

**2002 – Present**    **Consulting**

Public Safety Insight – Police Practices Expert.

NIJ/IACP – Technology consultant participating in the national standards development
committee for License Plate Recognition.

NIJ/IACP – Technology consultant participating in the national standards development
committee for Interview Room Recording Systems Standards.
CJIS – Criminal Justice Information Systems Committee – Member

North Idaho College Law Enforcement Program Advisory Committee – Chairman

Arrest Techniques Consultant – Use of Force, Taser, and Handcuffing

IACP – Technology Consultant

IACP LPR Advisory Committee – Technology Consultant

Booz/Allen/Hamilton, San Diego – Technology Consultant

Lockheed Martin – Grant Consultant

Technology consulting to various law enforcement agencies and law enforcement officers across the country

Technology consulting/commenting to various local and national media and magazine outlets, including *The Atlantic* (national magazine), ABC 20/20 News, CBC News (Canada), *Law Officer* magazine, Caliber Press *Street Survival*, *Computer World* magazine, Harvard University Government Innovators Network, Smart Cities Council, and local newspapers and television stations

U.S. Department of Justice – Past Communications Technology Member

Below 100 Corporation – Core Officer Safety Instructor and Current Board Member

Idaho Chiefs of Police Association – Past President

FBI National Academy Associates Montana-Idaho Chapter – Past Secretary-Treasurer

The Safariland Group LLC. – Law Enforcement Consultant

Dyneema Body Armor Focus Group, Las Vegas, Nevada – Law Enforcement Consultant

Center for Naval Analysis – Arlington, Virginia – Law Enforcement Technology Consultant

City of Hayden Lake Public Safety Commission – Chair


**2007 – 2009**      **Captain**
Post Falls Police Department                                    Post Falls, Idaho

Responsible for the operation of the four Divisions within the Department (Patrol, Communications, Investigations, and Information Systems).  The Department consists of 95 full-time employees and volunteers with a budget in excess of $4.3 million and covers a city of over 26,000 people, and a 911 PSAP providing service to two jurisdictions.

**1997 – 2007**      **Lieutenant – Patrol, Communications, and Information Systems Divisions**
Post Falls Police Department                          Post Falls, Idaho

Responsible for the Uniformed Patrol Division, 911 Communications Division and the Information Technology team. This included supervising 40+ employees in the different divisions. Responsible for the implementation of several Department programs, including reconstructing the Department policy on two separate occasions. Position included the oversight of the Department SWAT team and serving as SWAT Commander.

**2000 – 2002**          **Systems Administrator**

Post Falls Police Department                                        Post Falls, Idaho

Purchased, installed, and implemented TCP/IP network for Police Department, consisting of three separate buildings spanning three blocks, including 25+ client computers and several servers running Unix (SCO) and Windows operating systems. Served as the project manager for the research, design, and implementation of multi-faceted citywide wireless LAN.

**1994 – 1997**          **Administrative Sergeant**

Post Falls Police Department                                        Post Falls, Idaho

Responsible for Administrative duties including training, scheduling, purchasing and program implementation. Supervised Patrol Team, Animal Safety and Fleet Maintenance. Responsible for all Department training. Provided Arrest Techniques and handcuffing training to Department staff, as well as agencies in the surrounding area.

**1992 – 1994**          **Patrol Sergeant**

Post Falls Police Department                                        Post Falls, Idaho

Acting shift commander. Supervised Patrol teams responsible for the shift including serving as incident commander as needed.

**1990 – 1992**          **Patrol Officer**

Post Falls Police Department                                        Post Falls, Idaho

Worked as a Patrol Officer and Field Training Officer. Duties included attending training and developing the Department Field Training Manual, which was used to train law enforcement officers for our agency.

**1988 – 1990**          **Code Enforcement Officer**

Post Falls Police Department                                        Post Falls, Idaho

**1986 – 1988**          **Reserve Police Officer/ Animal Control Officer**

Post Falls Police Department                                        Post Falls, Idaho

**<u>Education</u>**          **North Idaho College**
        AAS Law Enforcement
        AAS Administration of Justice
**University of Oklahoma –** Administration of Justice
**University of Virginia**

**HAUG AFFIDAVIT--EXHIBIT A, P. 64**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 64

**POST Certifications**

Basic
Intermediate
Advanced
Supervisor
Management
Arrest Techniques and Handcuffing – Past Idaho POST Instructor Certification
Officer Survival – Current Idaho POST Instructor Certification
Certified Force Science Analyst – Force Science Institute 2013, Los Angeles, CA
Certified Instructor – Institute for the Prevention of In-Custody Deaths, Las Vegas, NV.

## Police Training

2025

**Officer Created Jeopardy: What it is, Why it Matters and How to Train for it. – Vector Solution – (June 2025).**

**International Association of Chiefs of Police, IACP Law Enforcement Information Technology Training Conference and Exposition – Indianapolis, IN - (May 2025).**

- Real Time Health Monitoring: Revolutionizing Police Safety with Wearable Technology.
- Facilitating Collaboration: The Role of Crime Analysis in Advancing Reginal Information Sharing.
- CJIS Security Policy: Evolution, Challenges, and Compliance Strategies.
- Importance of Electronic Storage Detection K9's in ICAC Investigations.
- How Your Records Management Process Can Work for You – Leveraging RMS Functional Standards.
- CJIS Security Policy Modernization: The Audits Have Begun, Now What?
- Sexual Assault Kit (SAK) Tracing Systems: Overview, Opportunities, and Leading Practices.
- Policing Reimagined: Unlocking Safer Communities through Innovative Technologies.
- Using Technology to Enhance Your Crisis Response Program.
- Turn Trauma into Transformation: Tracking Critical Calls for Effective Officer Mental Health Strategies.
- Stop Losing Staff: Leveraging AI for Workforce Health and Wellbeing.

2024

**International Association of Chiefs of Police, IACP Annual Conference – Boston MA. – (October 2024)**

- The Failure of Supervision: Is It the Cause of Officer Failures.
- Combating Violent Crime in America: A Discussion with Federal Law Enforcement Leadership.
- Don't Get "Emplawyered"—Practical Employment Law Guidance for Law Enforcement Executives.
- Fear and How It Influences an Officer's Response.
- A Phased Approach to Active Shooter Response.
- Critical Incident Debriefs: Trends and Tactics.
- Solving De-escalation Through the Calculus of Reasonableness.

**HAUG AFFIDAVIT--EXHIBIT A, P. 65**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 65

- Advancing Policing Through Continuous Action: Lessons Learned from DOJ Pattern or Practice Investigations.
- PERF Town Hall in Collaboration with IACP.
- Crisis Intervention Involving People with Intellectual and Developmental Disabilities.
- Police Responses to Homelessness: The Current State of the Field.
- A Roadmap to Success: Enhancing Community Relations by Building Co-Responder Programs.
- Enhancing Law Enforcement Mobility: New and Expanded Capabilities Using Artificial Intelligence.

**ALERT International Conference – Spokane, WA – September 2024**

- Essential Concepts for 21st Century Police Leaders.
- Effects of Sleep on the Body and how it Effects the Job and Driving. (Dr. Louis James)
- Building the Best Course: Giving Your Students the Best Chance at Success.
- The Benefits and Use of Electric Vehicle in Law Enforcement.
- Stop Stick
- Pursuit Driving
- Pursuit Intervention Techniques.
- Pinning vehicles, High Risk Stops and Drug Stops.

**International Association of Chiefs of Police, IACP Law Enforcement Information Technology Training Conference and Exposition – Charlotte, NC - (May 2024).**

- Artificial Intelligence and You: Guidance for Mid- and Small-Size Agencies.
- Community-Driven Real-Time Crime Centers.
- Drones in Law Enforcement: Oklahoma City Police Department's Patrol-Led Deployment Model.
- Cryptocurrency – Technology and Tools for a Successful Investigation.
- Mobility First: Pushing Information to the Edge Improves Operations and Officer Safety
- CJIS Security Policy Modernization 5.9.3 and Beyond: What it Means to Your Agency.
- AI Use Cases for Public Safety Technology.
- Walk, Run, then Fly: How DNA and Genetic Genealogy is Transforming 21st Century Crimefighting.
- Analyzation of Use of Force Incidents through a Review Unit.

**Force Science Institute Certification Course – Dallas, Texas (DFW Airport Department of Public Safety Headquarters).  (February 2024)**

- Understanding and Leveraging the Psychophysiology of Emotional Intensity
- Excited Delirium
- Overview of Vision
- Fundamentals of Human Performance

- The Emotional Component of Crisis Encounters and the Investigatory Implications
- The Cognitive Interview – Memory Enhancing Techniques for Investigative Interviewing
- Interviewing Officers Who Have Been Involved in a Shooting: Policy and Legal Implications
- Principles of Biomechanics
- Officer & Subject Interactions
- The Psychology of Crisis Encounters
- Overview of Attention
- Arrest Related Death
- Post Use of Force – Investigating Officer Involved Shootings

**A Lawyer's Perspective: Don't Wait Until IT Happens! The Legal Necessity for Proactive Training (January 2024). Calibre Press Educational Session.**

**2023**

**Cops Charged Criminally: Does The Graham Standard and Qualified Immunity Apply in My Jurisdiction? A Legal Analysis. (November 2023)**

**International Association of Chiefs of Police, IACP Annual Conference – San Diego, Ca. – (October 2023)**

- Maximizing De-escalation.
- Administrative Investigations and Discipline in Use of Force Cases.
- Fear and How It Influences an Officer's Response.
- Threat Assessments: Disentangling Mental Illness and Violence to Enhance Public Safety.
- Officer-Involved Shootings: Lessons Learned and How Agencies Can Best Prepare, Manage, and Withstand These Critical Incidents.

**International Association of Chiefs of Police, IACP Law Enforcement Information Technology Training Conference and Exposition, Virtual Meeting (May 2023)**

- New CJIS Security Policy Requirements and Their Impact on Criminal Justice Agencies.
- Using Body-Worn Camera Footage to Improve Community Engagement: A Tale of Two Cities.
- Achieving CJIS Compliance with Smartphones.
- Wireless Technology Use in Exigent Circumstances.
- Empowering the Community through Technology.

**2022**

**International Association of Chiefs of Police, IACP Annual Conference – Dallas, Tx. – (October 2022)**

- Developing a Comprehensive Alternative Response Program for Mental Illness-Related Calls.
- When a First Amendment Auditor Comes to Your Town.
- A Law Enforcement Roadmap to De-Escalation, Field Dynamics and Decision Making.
- De-Escalation as an Outcome.
- Viral Police Body-Cam Videos: A Cautionary Tale.
- Use of Force, Finding our Way Forward through Police Reform.

**2020**

**International Association of Chiefs of Police, IACP Law Enforcement Information Technology Training Conference and Exposition, Virtual Meeting (May 2020)**

**IACP Annual Conference – Virtual Meeting (October 19th-23rd 2020)**

- Increase Your Response Options: Have a Full Toolbox When Responding to Suicidal Subjects
- Making Police Training More Effective: Less Teaching, More Learning
- When is "Objectively Reasonable" Unreasonable?
- The ADA and Policing: What Every Officer Should Know When Interacting with the Disabled

**Understanding the Limitations of Video Footage – Virtual Training (October 6, 2020)**

- Technical factors, such as compression and the perspective/angle, that can complicate the use of video as evidence
- What involved officers, investigators and administrators should know about video evidence prior to going into an interview
- Key questions to ask when analyzing incident video — and the value of using forensic experts in video analysis
- How incident video can be useful as a training tool

**Democratization of Video Evidence: Equipping Investigators with Modern Tools and Know-How**

- Overview of typical serious crimes investigation encumbered by dozens of hours of critical video evidence
- Expose dynamic and expedited methods for video-interrogation and suspect tracking
- Demonstrate simple techniques for accurate extraction of your visual evidence. Guest speakers/investigators will outline their agencies' innovative strategies to equip every investigator with the training, skills and tools required to effectively take video exhibits from the crime scene to the courtroom

**IACP Annual Conference – Chicago, Ill. – (October 2019)**

- Maximizing De-escalation

**2019**
- Increase Your Response Options: Have Full Toolbox When Dealing with Suicidal Subjects
- De-escalation and other Use of Force Concepts
- Psychological Analysis of Violent Motives
- Use of Force and De-escalation: Innovations in Policy and Training

**HAUG AFFIDAVIT--EXHIBIT A, P. 68**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 68

- Releasing Bodycam Footage: Why it must Become Standard Operating Procedure
- Approaches to Investigating Officer-involved Shootings from Law Enforcement and Prosecution Perspectives
- Community Engagement after a Critical Incident: Evaluating Secondary Trauma in Police Departments

**IACP Drugs, Alcohol and Impaired Driving Conference, Anaheim, California. – (August 2019)**

- Leadership Commitment for the Impaired Driving Enforcement Program
- Training Your Prosecutors: Ensuring Prosecutors get the most out of Cross Examination of the Expert Witness
- Managing the Physical and Mental Stressors of the Job

**IACP, 38th IACP Law Enforcement Information Technology Training Conference and Exposition, Jacksonville, Florida. – (May 2019)**

- Are you ready for the next Disaster – Responding to Disasters with Integrated Technology
- Facial Recognition in the Cloud
- Preparing for the Unpredictable
- Understanding the Value of Digital Evidence
- Using Data and Analytics to Identify and Manage Officer Wellness
- Leveraging the Power of Technology to Increase Agency Efficiency

**FBI National Academy Associates Annual Training Conference (July 2018, Quebec City, Canada)**

2018

- Modernization of Policing
- Radical Left-Wing Gangs in America
- Body Worn Cameras: Are BWC's the Right Fit for All Agencies?
- Prescription Drug Monitoring Programs
- 21st Century Policing
- Dismantling MS-13
- Coordination with Prosecutors, Public-Sector Stakeholders and Private-Sector Stakeholders

**Force Science Institute – De-escalation, When and How to Make It Work – Webinar – (June 2018)**

- Situations that are most suited for de-escalation—and those that are not
- The current state of case law on de-escalation tactics
- Tactics to make contact, build rapport and wield influence when dealing with persons in crisis
- Actions to consider when de-escalation fails

**HAUG AFFIDAVIT--EXHIBIT A, P. 69**

**Bureau of Justice Assistance – Body-worn Camera Training and Technical Assistance National Meeting – Washington D.C. – (March 2018)**

- Body-worn Camera 101 – Building a foundation for your body-worn camera project
- Body-worn camera case studies
- Technological issues with body-worn cameras
- Body-worn camera policy, research and practice
- Body-worn camera procurement considerations
- Body-worn camera policy, issues and trends
- Video analytics and redaction
- Working with prosecutors and the benefits of body-worn cameras

**Idaho Chiefs of Police Association Winter Conference, Nampa, Idaho –  (January 2018)**

- Idaho Supreme Court Update – Chief Justice Roger Burdick
- Reducing Law Enforcement Risk – Below 100 Training
- Gender Bias in Policing
- Successful Drone use in Law Enforcement

**IACP Annual Conference – Philadelphia, Pennsylvania – (October 2017)**

2017

- Mental Illness Response: Legal, Policy, and Training Issues – Discussion of developing trends involving interaction with mental illness of those in crisis, including use of force, de-escalation and current legal standards
- Effectively Responding to Officer-involved Shootings and Other Critical Incidents.
- Use-Of-Force: How do Current Trends influence Policy, Training and Investigations?
- Officer Ambushes: Understanding These and Other Violent Attacks Against the Police – Results from the IACP Task Force.
- My Greatest Fear is Losing an Officer in the Line of Duty. Am I prepared to Lead through Tragedy?

**Spokane County Sheriff's Office, Spokane, Washington – Principles of Deadly Force, Stressing Safety and Acting within the Law – Spokane County Sheriff's Office, Spokane, Washington – (July 14, 2017)**

- Principles of law enforcement use of force
- Understanding law enforcement dangers
- Update on recent applicable case law related to law enforcement use of force
- Understanding the dangers of complacency and not following training
- Overview of the OODA Loop decision making process
- Importance of providing aid after the use of force
- Evidence gathering after the use of force
- Understanding the "Reasonable Effective Alternative" to the use for deadly force
- Unhealthy reliance on less-lethal technology

**HAUG AFFIDAVIT--EXHIBIT A, P. 70**

- Examples of lessons learned and review of cases
- Verbal warnings, when to talk, what to say and when to act

**Bureau of Justice Assistance – Body-worn Camera Training and Technical Assistance National Meeting – New Orleans, Louisiana – (April 2017)**

- Body-worn Camera 101
- Body-worn Camera Case Studies: Voices from the Field
- Technological Issues with Body-worn Cameras
- Implementing a Successful Body-worn Camera Project
- Procurement Considerations
- Body-worn Camera Policy and Trends
- Victims Issues Related to Body-worn Cameras
- Engaging Prosecutors and Other Stakeholders in Body-worn Camera Implementation
- Developing a Policy Compliance Strategy
- Strategic Communications, the Media and Body worn Camera Videos
- Training issues regarding Body worn Cameras
- Body worn Cameras and the Use of Force

**FBI National Academy Associates Annual Training Conference, Maryland Delaware Chapter – Dover, Delaware – (April 2017)**

- Case Study: Pulse Night Club Shooting, Orlando Police Department
- The Most Effective Weapon You Will Ever Carry On Patrol: Your Mind – Dr. Warrick
  - Tactical thinking
  - OODA Loop
  - How your mind works under stress
  - Human dynamics under stress
  - Combat mindset
- Risk Management – Gordon Graham

**Body-worn Camera Forum, Practical Strategies from Experienced Agencies – San Diego, California – (February 2017)**

- Emerging Trends in Body-worn Cameras
- Early Adopters and Their Stories
- Boost the ROI from Body-worn Cameras with Video Analytics
- Best Practices for Reviewing Body-worn Camera Footage after a Use of Force Incident
- The Role of Body-worn Cameras in the Prosecutorial Process
- Video Redaction: As a Service vs. A Staffing Nightmare
- Providing Answers to Your Pressing Policy Questions
- Reviewing Idaho's Rules on Video and How it Might Affect the National Model
- Funding Your Body-worn Camera Initiative

- Managing and Storing the Data in an Effective Manner
- Town Hall: What's Next with BWC

**Idaho Chiefs of Police Association Winter Conference, Post Falls, Idaho – (January 2017)**

- Responding and investigating Mass Shootings – Aurora Theater Shooting Overview
- Hostage Negotiations, Midland City Alabama – SSA Dalfonzo HNT
- Responding and investigating Sniper Attacks - Washington D.C. Sniper Case Overview
- Body-worn Camera Video Retention and Release
- Video Forensics – "Should the Officer Review Video Prior to Writing UOF Report?"
- Policy Development

**Professional Law Enforcement Training – Advanced Search and Seizure Techniques, – Spokane, Washington – (October 2016)**

2016
- Understanding the 4th Amendment
- Up-to-Date Court Rulings Regarding Search & Seizure
- Search Warrant Exceptions
- Vehicle Searches
- School Searches
- Warrantless Search of Cellphones
- Search Warrant Preparation
- Penal Interest Search Warrants
- Anticipatory Search Warrants
- Search Warrant Suppression Hearings
- Dangers of Search Warrant Execution
- Working with Prosecutors
- Scenario-based Exercises
- From Search Warrant Affiant to Prison (Dangers of Inaccurate Information)
- Civil Liability for Police Officers

**FBI National Academy Associates Annual Training Conference – Boise, Idaho – (September 2016)**

- The Traumas of Law Enforcement, Effects of Line Of Duty Deaths – Concerns of Police Survivors
- Boston Bombings, Lessons Learned – Chief Daniel Linskey

**Use of Force Summit, Policy Implementation and Training in a Changing World – Coral Gables, Florida – (September 2016)**

- State of the industry: Charting Use of Force in the 21st Century
- Leading the Culture Change: From Continuum to De-Escalation
- Managing Effective Reviews through Adequate Documentation and Data Management
- How to Conduct Effective Reviews and Avoid Common Mistakes

**HAUG AFFIDAVIT--EXHIBIT A, P. 72**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 72

- Successful training Methods to Achieve Improved Results
- Case Study with Seattle Police Department: Reforming Use of Force Practices and Oversite
- Preventative Measures: Tips to Avoid Litigation and Effective Strategies to Prepare for it.

**Body worn Camera Forum, Field Tested Lessons for a Successful Program – Coral Gables, Florida – (September 2016)**

- Handling Redactions and Protective Privacy

**FBI National Academy Associates Annual Training Conference – St. Louis, Missouri – (July 2016)**

- Focus on Counterterrorism – FBI Counterterrorism Division
- Department of Justice: Pattern and Practice Investigations and Consent Decrees
- Innovative Vehicle Technology Which is Improving Officer Safety and Reducing Emergency Vehicle Related Accidents
- FBI Joint Counterterrorism Assessment Team (JCAT) Overview
- Ethical Decision Making – Gordon Graham
- "A Conversation with the Director" – Director James Comey
- Critical Incident Case Study: Ferguson, Missouri – Chief Jon Belmar and Robert McCulloch, Prosecuting Attorney, St. Louis County
- Media for Law Enforcement Executives – Ari Fleischer, Former White House Press Secretary

**California Training Institute – Force Encounters Analysis, Understanding Human Performance during Critical Incidents – Spokane, Washington – (July 2016)**

- Closing the gap between public perception & the truth about Use of Force issues
- How human performance science applies under the Graham Standard of Reasonableness
- Common errors and root causes of officer error in the performance of duties
- How threat-processing differs under stress
- What are the officer's limits of attention from a physiological standpoint?
- Predicting the physiological, perceptual, and cognitive factors that affect an officer's performance under different levels of stress
- Predicting the level of impairment due to fatigue caused by hours of wakefulness and/or loss of sleep
- Decision-making types (analytical/recognition-primed), implicit bias, and how to mitigate error
- Officer vs. suspect reaction time analysis
- Why perceptual distortions & stress may create differences between human memory & forensic evidence

**HAUG AFFIDAVIT--EXHIBIT A, P. 73**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 73

- Body cameras as forensic evidence:  Best practices, potential problems, and evidence-based recommendations
- Best practices in Use of force investigations

**Association of Idaho Cities Annual Conference – Boise, Idaho – (June 2016)**
- Police Policy and Civil Liability

**FBI National Academy Associates Conference – Maui, Hawaii – (March 2016)**

- Lessons Learned from Mass Shooting Events
    - Prevention
    - Response to active shooter situations
    - Investigation of active shooter incident
    - Managing active shooter crime scene
    - Caring for victims of shooting
    - After-effects of shooting event

**ILEETA International Training Conference and Expo, Chicago Illinois – (March 2016)**

- Both Sides of the Door – Understanding proper crisis notification

**The Digital Policing Summit 2016 – Las Vegas, Nevada – (February 2016)**

- Finding Funding for Technology Initiatives
- Grant Reporting Requirements
- Lessons Learned: Body worn Camera Programs
- Gaining Community Support when Introducing New Technologies
- Digital Collaboration
- Drafting policy for New Systems Implementations
- Predictive Policing
- Social Media Management for Law Enforcement

**Shot Show – Las Vegas, Nevada – (January 2016)**

- Law Enforcement Education Program
    - Tactical Tips and Truths – Tips for SWAT Teams to reduce risk. National Tactical Officers Association

**Idaho Chiefs of Police Association – Boise, Idaho – (December 2015)**

**2015**

- Video data retention
- Dispatch certification
- Mental Health Overview
- FBI Overview of current Threats and Initiatives in Idaho – Active Shooter Awareness

**HAUG AFFIDAVIT--EXHIBIT A, P. 74**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 74

- Preventing, responding, and investigating active shooter incidents – an overview of the Sandy Hook Elementary School Shooting – Lt. Dave DelVecchia
- Active shooter response, a survivor's perspective – Christina Anderson, survivor of the Virginia Tech Incident

**IACP Annual Conference – Chicago, Illinois – (October 2015)**

- Pathways to Violent Extremism: Understanding the Radicalization Process and How Best to Prevent Violence in Your Community – Professor Hamm, Indiana State University
- United States Supreme Court Case Law Review; 2014-2015 Term – Davis Spotts, Chief of Police, Esquire
- Technology: Tools for Working Smarter – James Coldren, Justice Programs
- Examining Best Practices for Video Evidence – Nancy Rodrigues, United States Department of Justice
- Chief Leadership – Addressing unprecedented law enforcement challenges, including rise in police officer attacks, divided race and community relations. What we must learn, unlearn, and relearn – Hajir Nuriddin, Bakersfield Police Department
- De-Escalation: Reducing Liability and Increasing Safety – Reducing officer and agency liability, improving community safety by de-escalation and building community trust – Steve Edwards, United States Department of Justice
- Special Weapons and Tactics Teams (SWAT): Overview of the National Tactical Officers Association study that was completed with the IACP – Mark Lomax, National Tactical Officers Association
- Responding to Persons with Mental Illness or in Crisis: Evolving Standards and Approaches – Lisa Judge, Tucson City Attorney
- When Extreme Violence Comes to Your Small Jurisdiction
- Law and Liberty, the United States Bill of Rights: It Is the Guarantee – Attorney Craig Ferrell
- Active Shooter With Hostages: Are You Ready? An overview of the Stockton Bank Robbery Active Shooters – Chief Eric Jones, Stockton Police Department
- Training and Policy Recommendations: A Critical Analysis of Police Use of Force – Professor of Criminal Justice, James Albrecht, Pace University

**FBI National Academy Associates Conference – Butte, Montana – (September 2015)**

- Officer Down – Managing the aftermath of a line of duty death or serious injury
- The Winning Mind Training – The Winning Mind, LLC
  - Psychology of winning
  - Decisions under stress
  - Sound decision making
  - Case Study – Tucson, Arizona Shooting (Sgt. Nancy Fatura)

- o   Why law enforcement officers fail
- o   Understanding Risk

**Idaho Chiefs of Police Association – Idaho Falls, Idaho – (August 2015)**

- Risk Management and Legal Update
- Body-worn Cameras – Technology Overview and Lessons Learned
- Officer-involved Shooting Investigations – Critical Incident Investigations
- International Terrorism Overview - SLATT
- Domestic Terrorism Overview – SLATT
- Understanding the Sovereign Citizen Threat – Bob Paudert
- Tribal Policing Overview

**FBI National Academy Associates Annual Training Conference – Seattle, Washington – (July 2015)**

- Future of Trust in Policing – Chief Abner, Nevada State Highway Patrol
- Law Enforcement Officers Killed and Assaulted – Officer Safety Awareness Training – LEOKA Brian McAllister
- Character Matter: Integrating Ethics into Daily Operations – Sheriff Matthew Bostrom PhD
- Investigating Technology Related Case – Training Enhancement Center
- A Conversation with the Honorable Robert Gates, discussion about world trends – Robert M. Gates, former Secretary of Defense and Former CIA Director
- Leadership training – The Mejorando Group
- Police, Fire, Schools: A coordinated team Response to Active Shooters Incidents

**4th Amendment Training – Post Falls Police Department – Post Falls – (June 2015)**

- Overview of police actions related to the 4th Amendment Search and Seizure, instructed by the Kootenai County Prosecuting Attorney's Office

**Institute for the Prevention of In-Custody Death, Inc. – Law Enforcement Camera-Based Systems Symposium – Las Vegas, Nevada – (June 2015)**

- Future of Investigations with Video Evidence – Al Youngs, J.D. Youngs Group
- Legislative Update: Body-worn Cameras – Isaiah Fields, J.D. Taser International
- Police Body Cameras: Balancing Competing Civil Liberties Concerns – Chad Marlow JD, ACLU, New York
- Video Storage Issues, Challenges, & Solutions – Robert Burwell, Milton Weatherhead, Netapp
- The Psychology of Perception – Charles Wilhite, JD
- Impact of Video on Reporting Accuracy – Don Dowes, M.D. Lompoc Valley Medical Center (CA).
- Training and Testing for Camera Competency – John G. Peters PhD
- Body-worn Cameras and Organizational Culture – Lt. James LaRochelle LVMPD
- The LVMPD Body-worn Camera Experience and Lessons – Lt. Daniel Zehnder LVMPD

- Not Your Parents' Candid Camera: Privacy Perils of Body worn Cameras – Ken Wallentine JD
- Video Evidence Issues – W. Ken Katsaris M.S. Consultant
- Body Cameras: A Sword or Shield? Sandra Senn, JD, Senn Legal, LLC
- Issues with using Body Cameras in Jails – Donald Leach, PhD Leach and Associates
- Labor Concerns about Cameras – Mike Rains JD. Rains Lucia Stern, PC
- Negotiating a Body-worn Camera Policy – Concerns and Pitfalls – Gary Ingemunson JD, Los Angeles Police Protective League
- Lies, Damned Lies and Video: Is Video the Truth the Whole Truth and Nothing but the Truth? Elmer Dickens JD, Washington County, Oregon

**FBI National Academy Annual Meeting – FBI Academy, Quantico, Virginia – (March 2015)**

- FBI Terrorism Screen Center Update – Assistant Director Chris Piehotas
- FBI ViCAP Update – Glen Wildey, FBI Crime Analyst
- National Center for Missing and Exploited Children Update
- Cyber Security Situational Update – SSA James Kyle
- Counterterrorism Briefing and Update – Section Chief Nikki Floris

**Gonzaga University – Achieving Zero Suicide for our Inland Northwest Communities – Gonzaga University, Spokane Washington – (March 2015)**

- Achieving Zero Suicide – In healthcare, in our communities – Dr. Michael Hogan, Dr. Julie Rickard, Dr. Ursula Whiteside
- What's Working, What Isn't – Defining – Dr. Jenn Stuber, Matt Kuntz JD

**Individual Crisis Intervention and Peer Support Certification – Coeur d' Alene, Idaho - – (February 2015)**

**Idaho Chiefs of Police Association – Boise, Idaho – (January 2015)**

- Legal issues related to Body Cameras; trends related to body-worn camera technology - Retired Chief of Police Ken Wallentine.
- Outlaw Motorcycle Gang Training, undercover investigation techniques - Detective Long, Phoenix Police Department

**2014**

**IACP Annual Conference – Orlando, Florida – (October 2014)**

- A Police Officer's Attentional Process in an Officer-involved Shooting Incident – Executive Director, Force Science Institute, William Lewinski, PhD
- Recording Officers' Conduct: Avoiding Legal Pitfalls - Daigle Law Group, LLC, CT
- Police Interactions with Suspects with Mental Illness: How to Keep Officers and Suspects Safe and Reduce Injures – Plenary Workshop, panel discussion
- Rialto Police Department Body-worn Camera Experiment
- Excited Delirium Syndrome: A Threat to Officer Safety – Professor of Neurology and Molecular and Cellular Pharmacology, University of Miami, Deborah Mash PhD

**HAUG AFFIDAVIT--EXHIBIT A, P. 77**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 77

- Police Executive Research Forum – Town Hall Meeting, Hilton Orlando. Discussion of the use of force in law enforcement

**FBI National Academy Associates Conference – Coeur d' Alene, Idaho – (September 2014)**

- The Spirit of Leadership: Winning Hearts and Inspiring Action – an underlying theme of ethically-based decision-making. Valerie Van Brocklin
- Leadership for Reducing Organizational Stress. Dr. Kevin Gilmartin
- Communication is a Leadership Imperative. Ancil Sparks

**38th IACP Law Enforcement Information Management Training Conference and Exposition, Atlanta, Georgia. – (May 2014)**

- Improving Officer Safety with Existing Technology – Guest Speaker
- How Important technology can assist Law Enforcement Service Delivery, Reduce Cost, and Connect with the Public

**Institute For the Prevention of In-Custody Death, Inc. Legal, Medical, and Scientific Constraints on Human Restraints Symposium – Las Vegas, Navada – (April 2014)**

- History of Restraint – Dr. John Peters
- Restraint Liability Concerns – Charles Wilhite, J.D.
- Proving Injury and Recovery of Police Negligent Handcuffing Injuries – Dr. Glen McGovern
- Current Restraint Issues – Ken Katsaris M.S.
- Reasonable use of Restraints in Corrections – Dr. Donald Leach
- Scientific Research, Sample Size and Significance – Dr. John Peters
- The History and Science of Positional and Restraint Asphyxiation – Dr. Tom Neuman
- Physiology of Restraint – A Review of Latest Research – Dr. Ted Chan
- Cuffs, Chains, Chairs – Dr. Gary Vilke
- TARP Instruction (Core Cuffing), Certified in the use of TARP cord – Ken Katsaris M.S.
- Electronic Restraints: Do they Shock the Conscience – Ken Wallentine JD
- The WRAP Restraint System: A descriptive, Field Setting Study – A. David Berman M.S.

**Idaho Chiefs of Police Association – Boise, Idaho – (January 2014)**

- Educational Presentation on Hiring, Discipline, Termination and other Liability Issues for Chiefs
- Internet Crimes Against Children
- Educational Presentation, Leadership in Police Organizations: Motivating Employees
- Body-worn Digital Video Cameras for Law Enforcement

**2013**   **Institute for the Prevention of In Custody Deaths, INC. – Excited Delirium and Agitated Chaotic Events Instructor Certification (December 2013)**

**Moscow Police Department – Ethical Decision Making for Law Enforcement (October 2013)** James Dodson, Commander, Odessa Texas Police Department

**Force Science Institute Certification Course – Los Angeles, California (Los Angeles County Sheriff's Department Training Facility).  (October 2013)**
- Understanding and Leveraging the Psychophysiology of Emotional Intensity – Dr. Sztajnkrycer
- Excited Delirium – Dr. Hall
- Overview of Vision – Chris Lawrence, MA
- Fundamentals of Human Performance – Chris Lawrence, MA
- The Emotional Component of Crisis Encounters and the Investigatory Implications – Dr. Artwohl
- The Cognitive Interview – Memory Enhancing Techniques for Investigative Interviewing – Dr. Geiselman
- Interviewing Officers Who Have Been Involved in a Shooting: Policy and Legal Implications – John Hoag, JD

**FBI National Academy Associates Conference – Helena, Montana (2013)**

- Success Under Stress – Dr. Sharon Melnick
- The Five Enemies of Effective Leadership – Dr. James Reese

**Idaho Chiefs of Police Association – Twin Falls, Idaho – (September 2013)**

- Pursuit/Shooting – Case Debrief
- In-Custody Death Investigation

**Officer Safety - Instructor Training – Coeur d' Alene, Idaho -– (June 2013)**

**37th IACP Law Enforcement Information Management Training Conference and Exposition, Scottsdale, Arizona – (May 2013)**

- Using Technology to Increase Officer Safety – Guest Speaker
- LPR Data Sharing
- Investigating and Preventing Gun Violence in our Communities
- NLETS Policy
- Managing the Life Cycle of Digital Evidence
- MLETS Technology and Operational Panel Discussion

**International Association of Property and Evidence – Property and Evidence Management Recertification – (April 2013)**

**Idaho Emergency Communications Committee Training – Next Generation 911 Overview, Geo Comm – Twin Falls, Idaho**

**Firesafe – "Is Your School Safe" – Webinar (March 2013)**

- Preparing school safety plans

**National Tactical Officers Association – Webinar (February 2013)**

- Preparing Today's Patrol Officers for the Next Critical Incident

**HAUG AFFIDAVIT--EXHIBIT A, P. 79**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 79

**Idaho Chiefs of Police Association – Boise, Idaho – (January 2013)**

- Advanced Media Relations
- Eyewitness Identification Best Practices
- New DNA in Law Enforcement -Dr. Greg Hampikian

**2012**

**University of Idaho – Officer Safety Below 100–Cyber Security Workshop (October 2012) -October 2012**

- Cyber Security Workshop

**Idaho Chiefs Of Police Association – Boise, Idaho – (June 2012)**

- Idaho Suicide Prevention
- Idaho Children's Trust

**FBI National Academy Associates Conference – Coeur d' Alene, Idaho – (September 2012)**

- Effective Management and Leadership - FLETC
- Leadership Training – Gordon Graham

**Idaho Chiefs Of Police Association – Boise, Idaho – (January 2012)**

- Communication for Law Enforcement  - Rural Policing Institute

**2011**

**IACP Annual Conference – Chicago – (October 2011)**

- Law Enforcement Response to Individuals with Mental Illness
- Officers' Personal Cell Phones
- Police Pursuit Policy and Practice
- Data-Driven Decision Making: Reducing Operating Costs While Maintaining Mission Excellence
- Courage Under Fire – A Tactical and Psychological Debriefing of the Assault on the Detroit Police Department

**FBI National Academy Associates Annual Conference – Billings, Montana**

- Outlaw Motorcycle Gangs
- Use of Force Investigations
- Internal Affairs Investigations

**Idaho Chiefs Of Police Association – Coeur d' Alene, Idaho – (September 2011)**

- Leading a High-Performance Organization – PMI
- Forensic Computer Analysis Training
- Probation and Law Enforcement Cooperation
- Law Enforcement Accreditation Training

**Mental Health First Aid Certification Training (August 2011)**

**HAUG AFFIDAVIT--EXHIBIT A, P. 80**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 80

**Juvenile Homicide and juvenile Mass Murder – Coeur d' Alene – (August 2011)**

- Exploring the causes of teen murder
- The warning signs of potential killers
- Why Teens Kill
- History of Teen Murder and School Shootings
- Trends and Cause of Teen Murder
- Warning Signs, Triggers, and Prevention

**State and Local Anti-Terrorism Training Program – Post Falls, Idaho – (August 2011)**

**Idaho Chiefs Of Police Association – Boise, Idaho**

- Idaho Innocence Project, Boise State University
- Agency accreditation procedures, Boise Police Department
- Technical aspects of social media in law enforcement, Boise Police Department
- "What police leaders need to know about pursuits" – Boise Police Department
- Officer phlebotomist program – Napa Police Department

**Suicide Prevention for Mental Health Professionals – Coeur d' Alene, Idaho – (September 2011)**

- Overview of the Question. Persuade, Refer (QPR) Suicide Prevention Program – Dr. Paul Quinnett, PhD

**FBI National Academy Associates Four State Conference, Jackson Hole Wyoming**

- Law Enforcement Officer Killed and Assaulted training
- Leadership training

**Idaho Chiefs Of Police Association – Coeur d' Alene, Idaho**

- Law enforcement leadership training
- Legal updates
- Alcohol and drug abuse amongst teens

**American Council on Criminal Justice Training, Officers Role in Managing the Use of Force Incident – Coeur d' Alene, Idaho – (November 2011)**

- Proper Perception Management
- Properly documenting the Use of Force
- The cause of civil suits
- Search Warrants and the Exceptions
- Use of Force
- ADA in Law Enforcement
- Force Continuum

**2010**      **34th IACP Law Enforcement Information Management Training Conference and Exposition, Atlanta Georgia**

**HAUG AFFIDAVIT--EXHIBIT A, P. 81**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 81

**Bureau of Justice Assistance, U.S. Department of Justice – State and Local Anti-Terrorism Training (August 2010)**

**2009**        **Rocky Mountain Program Leadership Program – Cheyenne Mountain, Colorado**
**Co-Instructed – Arrest Techniques and Handcuffing class, Post Falls, Idaho**

**FBI National Academy Associates Conference – Missoula, Montana**
- Prescription drug training

**FBI National Academy Associates Conference – Post Falls, Idaho**

**2008**
- Surviving a critical incident
- Terrorism training
- School Violence
- Strategic planning

**U.S. Attorney General's Office, Spokane Washington – Cyber Crimes Investigations (September 2008)**

- Introduction to Cyber Crime
- Internet Communication Portals for Law Enforcement
- Search and Seizure of Electronic Evidence
- Wireless Networking and Internet Technology
- Digital Search Warrant Planning and Execution
- Computer Forensics
- Imagescan Software Training

**International Association of Property and Evidence – Property and Evidence Management – – Certified Evidence Officer**

**M26 Advanced Taser and Taser X26 Instructor Certification, Spokane Washington**

**2007**
**National Tactical Officers Association – Critical incident command – - Less Lethal Weapon Certification**

**2006**        **Taser International –Taser Instructor – Scottsdale, Arizona**

**Taser International – Taser Armorer – Scottsdale, Arizona**

**2005**        **IACP – In-Car Camera Training Law Enforcement and Prosecutors Course - Spokane, Washington – June 2005.**

**FBI refresher training**
Executive development
Employment law

**HAUG AFFIDAVIT--EXHIBIT A, P. 82**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 82

|  | **National Tactical Officers Association – SWAT Commander – Las Vegas, Nevada – November 2005.** |
|---|---|

**National Tactical Officers Association – SWAT Commander – Las Vegas, Nevada – November 2005.**

**2004** Tactical team operator/active shooter/simunition.

**FBI refresher training**
Forensic investigations

**The National Emergency Response and Rescue Training Center – Senior Officials Workshop for WMD/Terrorism Incident Preparedness – Boise, Idaho – June 2004**

**2003** **M26 Advanced Taser and Taser X26 Instructor Certification – November 2003**

**Arrest techniques and Handcuffing**
**Leadership**
**FBI refresher training**
**Taser Instructor**

**Plant Equipment, Inc. – 911 Telephone System Operation Training – June 2003**

**2002** **Smith and Wesson Academy – Armorers Certification – July 2002**

**Leadership**
**Arrest techniques and Handcuffing**

**United States Department of Justice – Law Enforcement Information Technology, Planning, Purchasing and Managing your Technology Initiative – Community Oriented Police Service – November 2002.**

**2001** **Terrorism/Counterterrorism**
**Arrest techniques and Handcuffing**
**Leadership**
**Computing Technology Industry Certification – Certified Computer Professional**

**2000** **FBI National Academy, – Session 201 – Quantico, Virginia – June 2000**

- Forensic Science
- Chemical Munitions in Law Enforcement
- Applied Behavioral Science for Law Enforcement Operations
- Management
- Mass Media and the Police
- Legal Issues

**Arrest techniques and Handcuffing**
**Arrest techniques and Handcuffing**
**Executive health/Crisis management**
**Chemical agents in law enforcement**

**1999** **Basic SWAT Training/Certification**
**Public Agency Training Council – Improvised bombs/Explosive devices – August 1999**

**Smith/Wesson Pistol**
**Impact Weapons**
**Firearms Instructor**

**1998**         **Arrest Techniques and Handcuffing**
**Arrest Techniques and Handcuffing**
**Techniques for Implementing Community Oriented Policing**

**1997**         **Training Assessment Conference**
**Arrest Techniques and Handcuffing**
**Arrest Techniques and Handcuffing**
**Arrest Techniques and Handcuffing**
**Leadership**

**1996**         **American Society of Law Enforcement Trainers – Personnel Defense Seminar.**
**American Society of Law Enforcement Trainers – Scenario Based Training**
**ASLET Training**
**ASLET Training**
**American Society of Law Enforcement Trainers – Use of Force**
**American Society of Law Enforcement Trainers – Chemical Munitions Instructor -**
**American Society of Law Enforcement Trainers – Chemical Munitions Overview -**
**Arrest Techniques and Handcuffing**
**Arrest Techniques and Handcuffing – Instructor**
**PPCT Management Systems – Spontaneous Knife Defense Instructor –**
Defense segment, including basic defense principles and exercises for
reaction in an attack initiated suddenly and unexpectedly using knives and
short weapons

**1995**         **Officer -involved Shooting and Fatal Investigations Seminar**
**Interview and Interrogation**
**Drug Enforcement**
**NIK Identification Instructor – Master Trainer**
**Supervisor Skills for the 90's**

**1994**         **Call Response Training**
**Domestic Violence**
**Kaminsky Field Training**
**Chemical Munitions**

**1993**         **Supervising Problem Employees**
**First Line Supervisor**
**Public Information Officer Training**

**1992**         **First Line Supervisor**
**Field Training Officer**

**1991**         **Arrest Techniques and Handcuffing – Instructor**
**Officer Survival**
**Drug Team Management**
**Instructor Development**

**HAUG AFFIDAVIT--EXHIBIT A, P. 84**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 84

| 1990 | **WIN Seminar – Street Survival** |
|------|-----------------------------------|
|      | **Tactical Edge Seminar** |
|      | **Marijuana Investigation** |
|      | **Drug Dog Training** |
|      | **Search Warrants** |
|      | **Idaho Narcotics Officers' Association –  Firearms** |
|      | **Firearms Training** |

| 1989 | **Basic Idaho POST Police Academy – Session 83** |
|------|--------------------------------------------------|

| 1988 | **Northwestern University – Police Officer Survival Tactics – May 1988** |
|------|-------------------------------------------------------------------------|

| 1986 - Present | **Various Training Schools –** North Idaho Reserve Academy, computer related training, A-Plus computer certification |
|----------------|--------------------------------------------------------------------------------------------------------------------|

## Achievements

2025

**Instructor – Officer Safety Instruction (June 2025), Glendale Heights, ILL.** Presented officer safety training, and a Train the Trainer Course. Officers from several agencies attending. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (June 2025), Ottawa County, MI.** Presented officer safety training, and a Train the Trainer Course. Officers from several agencies attending. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (May 2025), Golden, CO.** Presented officer safety training, and a Train the Trainer Course. Officers from several agencies attending. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (May 2025), Murfreesboro, Tn.** Presented two days of officer safety training for the Murfreesboro Police Department. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – IACP Technology Conference (May 2025) International Association of Chiefs of Police Conference – Indianapolis, IN.** Spoke on using technology for drone detection during tactical operations and large-scale public events using ATAK.

**Instructor – Officer Safety Instruction (April 2025), Tempe, Az.** Presented officer safety training in the Tempe area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (March 2025), Calumet City, Il.** Presented three days of officer safety training for the Calumet Police Department. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (March 2025), South Bend, IN.** Presented officer safety training, and a Train the Trainer Course, for the South Bend Police Department. Officers from several agencies attending, including the Notre Dame Police Department, Elkhart Police, Culver Police, Daton Ohio, West Virginia Risk Pool, and others. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**2024**

**Guest Speaker – IACP Technology Conference International Association of Chiefs of Police Conference – May 2024 – Charlotte, NC.** Spoke on using modernized identity technology to improve officer situational awareness and efficiency.

**Speaker/Guest Lecturer – FBINA First Line Supervisors School, 2024, Fort Oglethorpe, Georgia. (March 2024) -** Provided instruction to supervisors from several different agencies, on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques.

**2023**

**Guest Speaker – National Sheriffs Association Conference (June 2023) – Grand Rapids, Michigan.** Spoke on using technology to improve officer situational awareness and efficiency.

**Guest Speaker – IACP Technology Conference (May 2023) International Association of Chiefs of Police Conference – Salt Lake City, Utah.** Spoke on using technology to improve officer situational awareness and efficiency.

**Instructor – Crisis Communication, Baltimore, Maryland (May 2023).** Presented crisis communications training for the Baltimore Police Department.

**Instructor – Crisis Communication, Tulsa, Oklahoma (May 2023).** Presented crisis communications training for the Tulsa Police Department.

**Author –** *The Value of Using BWC Video for Training* **(June 2023)** – Bureau of Justice Assistance, Washington D.C.

**Instructor – Crisis Communication, Charleston, South Carolina (May 2023).** Presented crisis communications training for the Charleston Police Department.

**2022**

**Guest Speaker – IACP Conference (October 2022) International Association of Chiefs of Police Conference – Dallas, Texas.** Spoke on using technology to improve officer situational awareness and efficiency.

**2021**

**Speaker/Guest Lecturer – FBI First Line Supervisors School, 2021, Richmond, Virginia. (November 2021) -** Provided instruction to supervisors from 24 different agencies, on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques.

**Speaker/Guest Lecturer – Idaho Peace POST Academy – (November 2021) -** Provided instruction to recruits on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques and technology.

**Author –** *Audits and Compliance Reviews Can Strengthen Body-Worn Camera Programs.* December 2019 – Center for Naval Analysis, Washington D.C.

**Author –** *External Factors that Impact Body Worn Camera Program Staffing.* April 2021 – Center for Naval Analysis, Washington D.C.

**Author –** *Internal Factors that Impact Body Worn Camera Program Staffing.* May 2021 – Center for Naval Analysis, Washington D.C.

**Speaker/Guest Lecturer – Idaho Peace POST Academy – (May 2021) -** Provided instruction to recruits on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques and technology. (May 2021)

**2019**      **Speaker/Guest Lecturer – IACP – Drugs Alcohol and Impaired Driving Conference, Anaheim, California. – (August 2019) -** Provided instruction to conference attendees on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques and technology.

**Speaker/Guest Lecturer – Bureau of Justice Assistance Regional Meeting – Body-worn Camera Training and Technical Assistance (June 2019)** Provided overview of Body-worn Camera technological issues to attendees from across the Indianapolis, Indiana region. Attendees were from multiple law enforcement agencies in various stages of implementing body-worn camera programs.   Items discussed included: Project management strategies and approaches, legal issues and considerations with BWCs, Use of Force, data storage, management, redaction, maximizing evidentiary value of BWC footage, managing community expectations of BWCs, lessons learned, navigating impediments and hidden costs.

**Moderator – Bureau of Justice Assistance – Body Worn Camera Training and Technical Assistance National Meeting (March 2019)** Provided overview of Body-worn Camera technological issues to attendees from across the United States. Attendees were DOJ grant recipients in various stages of implementing body- worn camera programs.

**2018**      **Speaker/Guest Lecturer – Bureau of Justice Assistance – Body-worn Camera Training and Technical Assistance Regional Meeting (December 2018)** Provided overview of Body-worn Camera technological issues to attendees from across the Sacramento, California region. Attendees from multiple law enforcement agencies were in various stages of implementing body-worn camera programs.  Items discussed included: Project management strategies and approaches, legal issues and considerations with BWCs, Use of Force, data storage, management, redaction, maximizing evidentiary value of BWC footage, managing community expectations of BWCs, lessons learned, navigating impediments and hidden costs.

**Speaker/Guest Lecturer – Bureau of Justice Assistance – Body- worn Camera Training and Technical Assistance Regional Meeting (September 2018).**  Provided overview of

Body-worn Camera technological issues to attendees from across the St. Louis region. Attendees from multiple law enforcement agencies were in various stages of implementing body-worn camera programs.   Items discussed included: Project management strategies and approaches, legal issues and considerations with BWCs, data storage, management, redaction, maximizing evidentiary value of BWC footage, managing community expectations of BWCs, lessons learned, navigating impediments and hidden costs.

**Speaker/Guest Lecturer – FBI National Academy Associates, 2018 Annual Training Conference, Quebec City, Canada. (July 2018) -** Provided instruction to attendees on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations using risk management techniques.

**Instructor – Officer Safety Instruction (June 2018), Bozeman, Montana.** Presented officer safety training for the Bozeman Police Department. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Montana Association of Chiefs of Police and Montana Police Protective Association Conference, Bozeman Montana.** Presented officer safety training for the conference to law enforcement officers from across Montana. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – - Bureau of Justice Assistance – Body-worn Camera Training and Technical Assistance National Meeting (March 2018) – George Mason University, School of Policy and Government, Washington D.C.** Provided overview of Body-worn Camera technological issues to attendees from across the United States. Attendees were DOJ grant recipients in various stages of implementing body-worn camera programs.

**Instructor – Officer Safety Instruction (April 2018), West Richland, Washington.** Presented officer safety training for the West Richland Police Department (Washington). Law enforcement officers from several different jurisdictions in the Tri-City area attended. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer Bureau of Justice Assistance – Body-worn Camera Training and Technical Assistance National Meeting (March 2018) – Bureau of Justice Assistance – George Mason University, School of Policy and Government, Washington D.C.** Provided overview of Body-worn Camera technological issues to attendees from across the United States. Attendees were DOJ grant recipients in various stages of implementing body-worn camera programs.

**Instructor – Officer Safety Instruction (March 2018), Boise, Idaho.** Presented officer safety training for the Boise Police Department. Law enforcement officers from several different jurisdictions in the Boise area attended. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – New Jersey Policeman's Benevolent Association Conference (March 2018), Atlantic City, New Jersey. -** Provided instruction to police officers from

across New Jersey on officer safety techniques, reducing officer deaths and injuries, and how to use risk management techniques to reduce risk within their organizations. Attendees included 700 attendees from across the State of New Jersey.

**Instructor – Officer Safety Instruction (February 2018), Orofino, Idaho.** Presented officer safety training to law enforcement officers from several jurisdictions in the Clearwater County, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – Body-worn Camera Forum, San Diego, California (February 2018) –** *"Selecting Technology the Right Way"* – Provided presentation on body-worn camera technology, including the successful process to purchase the technology. Discussion included RFP process, test and evaluation, and implementation.

**Instructor – Officer Safety Instruction, Emmett, Idaho. (January 2018)** Presented officer safety training to law enforcement officers from several jurisdictions in the Emmett, Idaho area. Local and State law enforcement personnel attended. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Subject Matter Expert – IACP (February 2018) International Association of Chiefs of Police, Washington D.C.** Participated in working group tasked with updating the existing Body-worn Cameras Model Policy and Concepts & Issues Paper. The working group was made up of experts from around the country with various skill sets. I was assigned as subject matter expert to assist in policy development.

**2017**

**Instructor – Officer Safety Instruction (December 2017), Lincoln County, Washington.** Presented officer safety training, to law enforcement officers from several different jurisdictions in the Davenport area. Federal and local personnel attended. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Delaware Office of Highway Safety Statewide Highway Safety Conference (November 2017), Dover, Delaware. -** Provided instruction to 250 attendees from across Delaware on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations, using risk management techniques.

**Instructor – Officer Safety Instruction (October 2017), Clarkston, Washington.** Presented officer safety training to law enforcement officers from several jurisdictions in the Clarkston, Washington area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – IACP Conference (October 2017) International Association of Chiefs of Police Conference - Philadelphia, Pennsylvania.** On behalf of the National Highway Traffic Safety Administration, presented instruction to law enforcement attendees on the critical role of law enforcement leaders in reducing line of duty deaths and injuries.

**Instructor – Snohomish County Sheriff's Department, Washington (July 2017)** Consulting work with ten law enforcement trainers designated to teach officer safety classes to all new law enforcement recruits at the Washington State Criminal Justice

Training Commission Academy.   Assisted with curriculum and provided educational session for instructors.

**Instructor – Officer Safety Instruction (June 2017), Troy, Montana.** Presented officer safety training to law enforcement officers from several different jurisdictions in the Lincoln County, Montana area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Washington State Criminal Justice Training Commission Academy (June 2017)** Presented two days of instruction to law enforcement officers from the King County Sheriff's Department. Also, provided train-the-trainer instruction to certify King County supervisors and academy instructors for the Washington State Criminal Justice Training Commission to teach future recruits. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Washington Association of Sheriffs and Chiefs, 2017 Spring Exposition and Training Conference (May 2017) –** Officer Safety Presentation – Spokane Washington. Provided instruction to Chiefs and Sheriffs on reducing officer deaths and injuries, and how to reduce risk within their organizations.
**Instructor – Officer Safety Instruction (April 2017), Bozeman, Montana.** Presented officer safety training to law enforcement officers from several jurisdictions in the Bozeman, Montana area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (April 2017), Billings, Montana.** Presented officer safety training to law enforcement officers from several jurisdictions in the Billings, Montana area. Federal, State and local personnel attended. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Bureau of Justice Assistance – Body worn Camera Training and Technical Assistance National Meeting (April 2017)** Provided overview of Body-worn Camera technological issues to attendees from across the United States. Attendees were DOJ grant recipients in various stages of implementing body-worn camera programs.

**Speaker/Guest Lecturer – FBI National Academy Associates Maryland Delaware Chapter, Annual Training Conference, Dover, Delaware. –-(April 2017)** Provided instruction to attendees from across Maryland and Delaware on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations, using risk management techniques.

**Panelist – Spokane Public Radio Health Forum, Suicide Awareness, Spokane City Hall, Spokane Washington. (March 2017)** Spoke about suicide prevention efforts and the training law enforcement is providing employees in the area of suicide. Discussed suicide prevention, gun safety, best practices related to "suicide by cop," and officers dealing with and responding to calls involving threats of suicide.

**Instructor – Officer Safety Instruction, Idaho Falls, Idaho. (March 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Idaho

Falls, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Blackfoot, Idaho.  (March 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Pocatello, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Post Falls, Idaho. (March 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Kootenai County, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Nampa, Idaho.  (February 22, 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Boise, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Jerome, Idaho. (February 23, 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Boise, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Nampa, Idaho. (February 24, 2017)** Presented officer safety training to officers and Emergency Communication Officers in the Boise, Idaho area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – Body-worn Camera Forum, "Practical Strategies from Experienced Agencies" (February 2017) San Diego, California.** Provided presentation on body-worn camera technology, including the release of law enforcement video, developing proper policy and BWC training.  Provided attendees an overview of the technology including the benefits and limitations of body-worn technology.

**Instructor – Officer Safety Instruction, Spokane, Washington.    (January 2017)** Presented officer safety training to agents and administrators for the Spokane, Washington Sector of the United States Border Patrol. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

2016

**Instructor – Officer Safety Instruction, Kirkland, Washington. (November 2016)** Presented two days of officer safety training to 100+ law enforcement officers at the Kirkland Police Department (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Event sponsored by the Washington State Patrol, Kirkland Police Department and the National Tactical Officers Association.

**Guest Speaker – 2016 Public Safety Answering Point (PSAP) Seminar (October 2016) Boise, Idaho.**  Provided multiple presentations on officer and employee safety to approximately 180 dispatchers from across the State of Idaho.  Presentations covered the risks associated with the job and best practices dispatchers can use to reduce risk.

**HAUG AFFIDAVIT--EXHIBIT A, P. 91**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 91

**Instructor – Officer Safety Instruction, Everett, Washington. (October 2016)** Presented officer safety training to 65+ federal, state and local law enforcement officers in Everett, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Train the Trainer, Everett, Washington. (October 2016)** Presented officer safety training to 35+ local law enforcement officers to become instructors. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – International Society for Industrial Security Conference (ASIS), Orlando, Florida. (September 2016)** Provided presentation on body-worn camera technology, including the implementation challenges, lessons learned and best practices for law enforcement use of the technology. Presentation included discussions about storage, redaction, policy, training and overall implementation challenges.

**Guest Speaker – Use of Force Summit, Coral Gables, Florida. (September 2016)** Provided presentation on use of force and the use of law enforcement video technologies. Presentation covered best practices for incorporating video into use-of-force reviews, optimal order of operations for statement collection, developing policy, handling requests for use- of-force footage, and identifying the benefits and limitation of video footage. Provided attendees an overview of best practice in the investigation of use-of-force cases.

**Guest Speaker – Body worn Camera Forum, Coral Gables, Florida. (September 2016)** Provided presentation on body-worn camera technology, including developing a successful body-worn camera project, developing community support, managing and storing video footage, and policy development.  Provided attendees an overview of the technology including the benefits and limitations of body-worn technology in use-of-force cases.

**Speaker/Guest Lecturer – FBI National Academy Associates, Annual Training Conference, St. Louis, Missouri. - (July 2016)** Provided instruction to attendees on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations, using risk management techniques.

**Instructor – Officer Safety Instruction, Fort Hall, Idaho. (July 2016)** Presented officer safety instruction to tribal law enforcement officers in Fort Hall, Idaho. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Participant – White House, Advancing 21st Century Policing Briefing – Washington D.C. – (July 2016)** Selected as one of approximately 45 law enforcement executives to meet at the White House to discuss policing in the 21st Century. National implementation strategies were discussed related to the President's 21st Century Policy Report. Items of discussion included Police Data Initiative, Officer Safety and Wellness, Implicit Bias, and Social Media Next Steps.

**Speaker – Idaho Association of Idaho Cities Annual Conference – Law Enforcement Technology, Law Enforcement Video, Boise, Idaho. (June 2016)** Provided instruction to approximately 45 attendees on law enforcement technology related to body-worn

video. Presentation included program implementations, overall best practices, policy recommendations, legal issues, and technological issues.

**Speaker/Guest Lecturer – FBI Command College, West Yellowstone, Montana. (May 2016)** Presented officer safety instruction to 65+ federal, state and local law enforcement officers in West Yellowstone, Montana. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Fairbanks, Alaska. (May 2016)** Presented officer safety training to 50+ federal, state and local law enforcement officers in Fairbanks Alaska. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (March 2016), Maui, Hawaii.** Officer safety training, presented officer safety training to 50+ law enforcement officers at the Maui Police Department (Hawaii). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – FBI National Academy Associates, Annual Training Conference (March 2016), Maui, Hawaii. -** Provided instruction to 150 attendees on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations by using risk management techniques.

**Instructor – Officer Safety Instruction, Bellingham, Washington. (March 2016)** Presented officer safety training to 100+ law enforcement officers for the United Sates Customs and Border Patrol, Washington State Police, Ferndale Police, Bellingham Police, Snohomish County Sheriff, ATF, United States Coast Guard and Whatcom County, Washington Sheriff. Provide instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement s.

**Instructor – Officer Safety Instruction, Kirkland, Washington. (March 2016)** Presented three days of officer safety training to 100+ law enforcement officers at the Kirkland Police Department (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Event sponsored by the Washington State Patrol, Kirkland Police Department and the National Tactical Officers Association.

**Guest Speaker – Digital Policing Summit 2016, Las Vegas, Nevada. (February 2016)** Provided presentation on the basics of body-worn camera technology and protecting law enforcement data. Presentation provided attendees an overview of the technology, including the benefits and limitations of body-worn technology in use-of-force cases.

**2015**

**Co- Author – Law Enforcement Employment, "Addressing the Challenges of Retention and Recruitment" –** December 2015 issue of *Law and Order Magazine*.
**Instructor – Officer Safety Instruction, Newport, Oregon. (November 2015)** Presented Officer safety training to 50+ law enforcement officers. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Various agencies attended, including the Oregon State Police and the Lincoln County Sherriff's Office.

**Guest Speaker – IACP (October 2015), Chicago Illinois.** Presented instruction to 250+ law enforcement attendees on the best practices for managing, storing, and releasing law enforcement video evidence. Presentation covered the implementation, use, maintenance, and management of law enforcement technology systems, including policy development.)

**Guest Speaker – IACP Conference, Chicago Illinois. (October 2015)** On behalf of the National Institute of Justice Science and Technology Section, I presented instruction to 300+ law enforcement attendees on expanding the use of video technology in law enforcement. Presented best practices of the implementation, use of video, and the challenges law enforcement agencies face in implementing video technology projects, including in-car and body-worn video systems.

**Author – Officer Safety and Community Relations Article, "Reducing Tensions Between Police and the Citizens"** October 2015 IACP issue of *Law and Order Magazine*. Magazine was made available to all IACP Conference attendees.

**Instructor – Officer Safety Instruction (October 2015), Snohomish County, Washington.** Officer safety training, presented officer safety training to 50+ law enforcement officers at Snohomish County Sheriff's Department (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Also provided train-the-trainer course to certify 25 officers in becoming instructors.

**Keynote Speaker – Idaho Credit Union League, 2015 International Credit Union Day Dinner, Coeur d' Alene, Idaho.** *"Officers helping Officers – driving down line of duty deaths"* **(October 2015)** Discussed ongoing nationwide efforts to reduce law enforcement death and injuries through risk management and community partnerships.

**Instructor – Officer Safety Instruction, Coeur d' Alene, Idaho. (September 30, 2015)** Co-presented officer safety instruction to 30+ law enforcement officers. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Coeur d' Alene, Idaho. (September 11, 2015)** Co-presented instruction to 25+ law enforcement officers in Coeur d' Alene, Idaho. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – FBI National Academy Associates Annual Training Conference (July 2015), Seattle, Washington. -** Provided instruction on officer safety techniques, reducing officer deaths and injuries, and how to reduce risk within their organizations by using risk management techniques.

**Instructor – Officer Safety Instruction (June 2015), Boise, Idaho.** Presented officer safety instruction to 50+ law enforcement officers at law enforcement conference. Also, provided train-the-trainer instruction to certify attendees to teach officer safety course. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker – Idaho Sheriff's Association Annual Conference – Law Enforcement Technology, Law Enforcement Video (June 2015), Sun Valley, Idaho. –** Presented as an expert contractor for the United States Bureau of Justice Assistance (BJA.  Provided

instruction to approximately 80 sheriffs and attendees on law enforcement technology related to body-worn video. Presentation included program implementations, overall best practices, policy recommendations, legal issues, and technological issues.

**Participant – Executive Roundtable Discussion – Reducing Gun Violence (2015), Spokane Washington.** Was Invited to speak at roundtable discussion about reducing gun violence at the Washington Association of Sheriffs and Police Chiefs' Spring Exposition and Training Conference.  in Spokane Washington. Approximately 30 law enforcement executives convened to discuss reducing gun violence.

**Instructor – Officer Safety Instruction (May 2015)** Presented officer safety instruction to 50+ law enforcement officers at the Pacific Northwest Police Detection Dog Association annual conference. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker – Achieving Zero Suicide For Our Inland Northwest Communities Conference (March 2015) Gonzaga University, Spokane Washington.** Presented to 300+ conference attendees about suicide prevention efforts and the training law enforcement provides employees in the area of suicide. Discussed suicide prevention, gun safety, and best practices related to officers dealing with and responding to calls involving threats of suicide.

**Keynote Speaker – Kootenai County Fire and Rescue Annual Awards Banquet** – Post Falls. **(March 2015)**

**Instructor – Officer Safety Instruction, Grant County, Washington.  (March 2015)** Presented instruction to 25+ law enforcement officers from the Grant County Sheriff's Office (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Also provided train-the-trainer course to certify officer safety trainers.)

**Instructor – Officer Safety Instruction (February 2015), Bremerton, Washington.** Officer safety, Presented officer safety instruction to 45+ law enforcement officers from a variety of police departments in the Bremerton, Washington area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Also provided train-the-trainer course to certify officer safety trainers.

**Instructor – Officer Safety Instruction (February 2015), Grant County, Washington.** Presented officer safety instruction to 25+ law enforcement officers from the Grant County Sheriff's Office (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Also provided train-the-trainer course to certify officer safety trainers.

**Citizen of the Year (January 2015)–** Recognized by the Post Falls Chamber of Commerce at their Annual Award Banquet as Post Falls Citizen of the Year.

**Instructor – Officer Safety Instruction (January 2015), Yakima Police Department, Wa.** Presented officer safety instruction to 50+ law enforcement officers from the Yakima Police Department (Washington). Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Also provided train-the-trainer course to certify officer safety trainers.

**2014**

**Instructor – Officer Safety Instruction (December 2014), Walla Walla Police Department, Wa.** Presented officer safety instruction to 100+ law enforcement officers from the Walla Walla Police Department, Walla Walla County Sheriff's Office, as well as several other agencies in the area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Use of Force Shooting Review Board – Coeur d' Alene, Idaho (December 2014)**

**Instructor – Officer Safety Instruction (November 2014), Spokane County Sheriff's Department.** Presented officer safety instruction to 100+ law enforcement officers from the United States Air Force Military Police, Washington State Patrol and several other agencies in Spokane, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Guest Speaker – IACP Conference (October 2014), Orlando Florida.** Provided technology presentation to 250+ law enforcement executives, including best practices and the importance of building secure, robust networks and partnering with other agencies. Presentation included overview of latest technologies and solutions, as well as discussion of best practices, network security, policy development, and network standards.

**Guest Speaker – Idaho Public Safety Technology Summit (October 2014), Boise Idaho.** Provided technology presentation and Next Generation 911 update, including best practices, to approximately 100 law enforcement executives. The summit provided education to the attendees on Affordability, Collaboration, Partnering and Sustainable Long-term Planning as it relates to technology. (October 2014)

**Instructor – Officer Safety Instruction (October 2014), Central Washington University.** Presented officer safety instruction to 75+ law enforcement officers from the Washington State Patrol and several other agencies in Ellensburg, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations. Provided train-the-trainer instruction during this class.

**Instructor – Officer Safety Instruction (September 2014), Washington State Patrol, Burien Washington.** Presented officer safety instruction to 40+ law enforcement officers from seven different agencies. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (September 2014), Centralia Washington Police Department.** Presented officer safety instruction to 70+ law enforcement officers from seven different agencies in the Centralia, Washington area. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (September 2014), Adams County Washington Sheriff's Department.** Presented officer safety instruction to 25+ law enforcement officers in Adams County, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (September 2014 – two classes), Kent Washington Police Department.**  Presented officer safety instruction to 100+ law enforcement officers in Kent, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction, Kennewick Washington Police Department. (August 2014 – two classes)** Presented officer safety instruction to 50+ law enforcement officers in Kennewick, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Instructor – Officer Safety Instruction (July 2014), Spokane County Sheriff's Department.** Presented officer safety instruction to 20+ law enforcement supervisors in Spokane, Washington. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Association of Idaho Cities, Annual Training Conference (June 2014), Boise Idaho.**  Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations by using risk management techniques.

**Instructor – Officer Safety "Train the Trainer" Instruction, Idaho Falls Police. (June 2014)** Presented officer safety trainer instruction to 40+ law enforcement officers in the Idaho Falls, Idaho area. Agencies included the Idaho Falls Police, Idaho State Police and Bonneville County Sheriff's Department. Provided instruction on reducing officer deaths and injuries, and how to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer –38th IACP Law Enforcement Information Management Training Conference and Exposition (May 2014), Atlanta Georgia.** Provided officer safety instruction on reducing officer deaths and injuries, and how to use technology to reduce risk within law enforcement organizations.

**Speaker/Guest Lecturer – Washington Association of Sheriffs and Police Chiefs', 2014 Spring Exposition and Training Conference -** Officer Safety Presentation – Spokane Washington. Provided instruction to 200 Chiefs and Sheriffs on reducing officer deaths and injuries, and how to reduce risk within their organization. (May 2014)

**Author – "How Technology Can Save Lives and Prevent Injury"** April 2014 issue, *Law Officer* magazine

**Speaker/Guest Lecturer (April 2014) – Harford Community College, Maryland –** Officer safety presentation to the Harford Sheriff's Department, Bel Air, Maryland. Provided a train-the-trainer class to approximately 50 students representing 24 agencies.

**2013**    **Speaker/Guest Lecturer (December 2013) – Idaho State University – Provided** officer safety presentation to 50 law enforcement students at Idaho State University.

**Speaker – Central Washington Chief's and Sheriff's Meeting (December 2013) –** Officer safety presentation.  – Ephrata, Washington

**Speaker – Idaho Sheriff's Association Annual Conference (December 2013), Boise Idaho–** Provided officer safety instruction to 100 Sheriffs on reducing officer deaths and injuries, and how to reduce risk within their organizations.

**HAUG AFFIDAVIT--EXHIBIT A, P. 97**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 97

**Force Science Institute Certification (2013) –** Certified by the Force Science Institute to apply the principles to analysis of use-of-force incidents. Los Angeles, California

**Speaker – Idaho Chiefs of Police Annual Conference** – Officer safety presentation. – Twin Falls Conference

**Author – "Setting the Record"** June/July 2013 *Law Officer* magazine, Officer safety topic.

**Speaker – Association of Idaho Cities (AIC) Annual Conference (2013)** – Traffic Safety, Legislative update.  – Boise Conference

**Instructor – Post Falls Police Department (April 2013)** Co-instructed Arrest Techniques training session.

**Recognition (March 2013)** – Cited as a "Leader in Law Enforcement" by *Law Officer* magazine.
**Instructor – North Idaho College Police Academy –** Instructed officer safety curriculum.

**Speaker –36th IACP Law Enforcement Information Management Training Conference and Exposition**, Scottsdale, Arizona. Presented attendees with current officer safety trends and techniques for reducing law enforcement deaths and injuries.

**Vice President – Idaho Chiefs of Police Association** Elected by the ICOPA membership to serve as the Vice President of the Association.

**Use of Force Shooting Review Board – Coeur d' Alene, Idaho**

**Speaker – Association of Idaho Cities (AIC) Annual Conference** – "Doing More with Less. "

**2012**      **Keynote Speaker – Law Enforcement Video Association**

**Recognition** – Post Falls Police Department recognized as one of "Americas Finest" police agencies in January 2012 *Law Officer* magazine Profiles in Progressive Policing

**Speaker – Idaho Association of Paralegals Conference**

**Secretary/Treasurer – Montana/Idaho Chapter of the FBI National Academy Associates**. Elected by the members of the dual state association.

**Idaho Emergency Communications Commission** – Served as a Commissioner appointed by Governor Otter to represent the Idaho Chiefs of Police Association on the 911 Commission.

**2011**      **Speaker – Idaho Chiefs of Police Association**, Boise Idaho – Spoke on officer safety and reducing law enforcement officer deaths nationwide.

**Speaker** Spoke for *Law Officer* magazine on officer safety and reducing law enforcement officer deaths nationwide.

**Speaker – IACP Annual Conference.** Orlando, Florida – Law enforcement technology.

**Speaker – Idaho Chiefs of Police Annual Conference**, Coeur d' Alene, Idaho.

**Speaker 34th IACP Law Enforcement Information Management Training Conference and Exposition**, Atlanta Georgia.

**2010**    **Speaker – American Association of Motor Vehicle Administrators, 2010 Region IV Annual Conference**, Boise Idaho – Use of License Plate Recognition in law enforcement.

**Author – License Plate Recognition – January 2009** *Law Officer* magazine

**2009**    **Presenter - License Plate Recognition Web Cast for** *Law Officer* **magazine (June 2009)**

**Presenter – Cal Amp Mobile Users Conference,** San Diego, California. Present to group of law enforcement professional on the benefits of wireless technology in law enforcement.

**2007 – 2008**    **Speaker – National Technical Officers Association Conference**, Spokane Washington – Spoke about use of License Plate Recognition technology in law enforcement to 100 law enforcement specialists.

**FBI National Academy Associates – Montana/Idaho Chapter President**

**2005 – 2018**    **FBI National Academy Associates Idaho Advisory Board – Past Chairman**

**2006 – 2013**    **FBI National Academy Associates Youth Leadership Program – Board Member**

**1995 – 2018**    **North Idaho College Law Enforcement Program Advisory Board – Chair**
**North Idaho College Program Assessment Team – Member**
Worked as a three-person team to review the law enforcement program operations, including paperwork, curriculum, instructors and adherence to P.O.S.T. requirements**.**

**1997**

**Oral Board Member**
Lieutenant and other positions - Kootenai County Sheriff's Department, Coeur d'Alene Police Department, Rathdrum Police Department, Spokane County Sheriff's Department.

**1993 – 2018**

**2007**    **Use of Force Shooting Review Board**
Kootenai County Sheriff's Department (Idaho)

**2007**    **Author – "Electronic Citations in Law Enforcement "October 2007** *Law Officer* **magazine**

| | |
|---|---|
| **1995- 2006** | **Lead Instructor– North Idaho Reserve Academy** Arrest Techniques and Handcuffing |
| **2006** | **ICRMP/Lexipol State Policy Development Panel – Member**<br>Served as a panel member to assist in the development of a statewide modal policy for use by Idaho law enforcement agencies. |
| **2003** | **Presenter – *Computer World* magazine – Mobile and Wireless World Conference –Technology in Law Enforcement, Pushing the Boundaries** |
| **1999 – 2001** | **Member – Idaho POST Arrest Techniques Curriculum Committee**<br>One of several members who assisted in the development of the statewide POST Defensive Tactics and Arrest Techniques Manual. |
| **1998** | **Spirit Lake Police Department Assessment**<br>Worked with Post Falls Police staff to assist the Spirit Lake Police Department (Idaho) with consulting to enhance police services. |
| **1991** | **Recognition - Officer of the Year - American Legion, Post Falls Idaho**<br>**Recognition - Officer of the Year – Eagles Club, Post Falls Idaho** |

## Expert Witness Experience

| | |
|---|---|
| *2025* | ***Echols v. Robinson and Scott –*** Retained, provided consultation.<br>***CentralSquare Technologies LLC v. Carbyne, Inc***. – Retained, patent infringement case, case under review. |
| *2024* | ***Lamkin v. City of Coeur d' Alene*** - Provided consultation, analysis, and report.<br>***Hardy v. Kish, et al.*** – Provide consultation, analysis, and report.<br>***Breuer v. City of Sandpoint –*** Provided consultation and analysis. *Case dismissed.*<br>***Buchanan v. Kootenai County et al***. - Case currently under review.<br>***Johnson, Haresco and A.J. a minor child v. City of Buhl*** - Case currently under review.<br>***Vencine Hadley and Mary Flo Horan v. Washington State Patrol et al.*** - Provided consultation, analysis, and report. Case dismissed in MSJ.<br>***Sijohn v.*** **Kootenai County, Kootenai County Sheriff's Office et al.** - Case currently under review. |
| *2023* | ***Luddwig v. City of Pinehurst*** - Provided consultation, analysis, and report.<br>***King County v. Good - Provided*** consultation, analysis, and report. |
| *2021* | ***Dickenson v. Benewah County*** - Provided consultation, analysis, and report. |
| **2020** | ***King County v. Nelson –*** Provided consultation and analysis. State Court. |
| **2019** | ***Maddox v. City of Sandpoint, Idaho*** – Provided consultation, analysis and report. Testified in Federal Court.<br><br>***Grom v. City of Coeur d' Alene, Idaho*** – Provided consultation, analysis and report. |

**HAUG AFFIDAVIT--EXHIBIT A, P. 100**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 100

**2018**          ***Rice v. Ada County, Idaho*** – Provided consultation, analysis and report. Testified in Federal Court.

**2017**          ***Picatti v. Ada County, Idaho*** – Provided consultation, analysis and report.  Scheduled for trial in 2021. Federal Court.

                  ***Saetrum v. Ada County, Idaho*** – Provided consultation, analysis and report. Testified in Federal Court.

                  ***Ohio v. Raymond Tensing*** – Assisted Hamilton County Prosecuting Attorney with prosecution of homicide case. Testified in State Court on two occasions.

**2016**          ***State of Idaho v. Shaun Kelly*** – Provided consultation, analysis and report for homicide case.

                  ***Fletcher v. Ada County, Idaho*** – Provided consultation, analysis and report. Federal court.

                  ***Hogue v. Ada County, Idaho*** – Provided consultation, analysis and report. Federal court.

**2015**          ***Ohio v. Raymond Tensing*** – Assisted Hamilton County Prosecuting Attorney with prosecution of this case.  State court.

                  ***Murray v. City of Bonners Ferry, Idaho*** – Provided consultation, analysis and report. Federal court.

**2014**          ***Green v. City of San Francisco, California*** – Provided consultation, analysis, report and deposition testimony. Federal court.

                  ***Rice v. Ada County, Idaho*** – Provided consultation, analysis and report.  Federal court.

                  ***Taylor Bell v. Noblesville, Indiana*** - Provided consultation and report of findings. State court.

                  ***State of Washington v. Davon J. Henderson*** – Provided analysis, documents and testified in Washington State Court on LPR technology.

**2012**          ***Wise v. Kootenai County, Idaho*** – Provided consultation, analysis and report. Federal court.

**2010**          ***Towry v. Bonner County, Idaho*** – Provided consultation, analysis and report. Federal court.

**2010**          ***Petty v. Bonner County, Idaho*** – Provided consultation, analysis, and report and testified in Federal Court.

**HAUG AFFIDAVIT--EXHIBIT A, P. 101**
DEF'S EXPERT WITNESS DISCLOSURE--EXHIBIT A - P. 101

## Compensation

A nonrefundable retainer is due at time of document review. My compensation rate for my work is $300.00 per hour for review, and $350.00 per hour for deposition and trial, plus reasonable travel expenses. Deposition and trial are billed at a four-hour minimum. Time spent traveling and waiting to testify is considered billable time. See fee schedule for the complete schedule of fees.